KENNETH SALVATORE, Plaintiff-Appellant, v. MICHAEL GELBURD et al., Defendants-Appellees (The 1950 North Howe Condominium Association, Defendant).

First District (4th Division)   No. 1—89—3520

Opinion filed December 6, 1990.

David M. Smolin, of Smolin, Blum & Brandwein, of Chicago, for appellant.

Bernard L. Rivkin and Lee M. Weisz, both of Braun & Rivkin, Ltd., of Chicago, for appellees.

JUSTICE JIGANTI delivered the opinion of the court:

This case involves a dispute over the proper interpretation of a declaration of condominium ownership. The plaintiff, Kenneth Salvatore, and the defendants, Michael and Marilyn Gelburd, filed cross-motions for summary judgment, arguing contrary interpretations of the same clause of the condominium declaration. The trial court granted the defendants' motion and the plaintiff appeals.

The plaintiff, Kenneth Salvatore, and the defendants, Michael and Marilyn Gelburd, are owners of adjoining units in a three-unit condominium complex, 1950 North Howe, Chicago, Illinois. During the summer of 1988, the Gelburds built a storage shed on the roof of their unit. By definition of the condominium declaration, a roof is considered a common element of ownership. The Gelburds installed a wooden railing around the roof of the shed and a stairway enabling them to use the shed's roof as a sun deck. In the fall of 1988 Salvatore complained that chairs and a table on the roof of the shed were being blown about by the wind, causing loud noises to emanate from the roof. On November 1, 1988, the condominium association held a meeting attended by the plaintiff and the defendants. At the meeting, it was agreed that the Gelburds would remove the railing and the stairway and cease using the roof of the shed as a deck. The Gelburds also agreed to inform any subsequent purchasers of their unit that the shed roof was not to be used as a deck.

In November the Gelburds removed the railing and the table and chairs from the shed roof. On January 17, 1989, another association meeting was held. At the meeting, the association voted to ratify the construction of the Gelburds' rooftop storage shed if they complied with the conditions agreed to at the November 1 meeting. In March of 1989, the Gelburds removed the stairway to the storage shed. In April, the condominium association acknowledged through a letter to the Gelburds that they had complied with the requirements for ratification of their rooftop storage shed.

The plaintiff alleges that under section 4.09(b) of the declaration of condominium ownership for the 1950 North Howe Condominium, the shed constructed by the defendants on their roof is a prohibited alteration which the board is without authority to ratify. The parties

filed cross-motions for summary judgment. The trial court granted the defendants' motion and the plaintiff appeals.

The facts of this case are not disputed. At issue is whether the trial court erred in construing as it did section 4.09(b) of the condominium declaration. Section 4.09(b) reads in pertinent part as follows:

"4.09 Additions, Alterations or Improvements

* * *

(b) Except as otherwise provided in Section 7.01(a) hereof, no additions, alterations or improvements shall be made by a Unit Owner to any part of the *Common Elements* and no additions, alterations or improvements shall be made by a Unit Owner *to his Unit* *** *without the prior written consent of the Board.* *** If an addition, alteration or improvement is made by a Unit Owner without the prior written consent of the Board, then the Board may, in its discretion, take any of the following actions:

* * *

(3) Ratify the action taken by the Unit Owner, and the Board may (but shall not be required to) condition such ratification upon the same conditions which it may impose upon the giving of its prior consent under this Section." (Emphasis added.)

The plaintiff insists that under a proper reading of section 4.09(b), the condominium association did not have the authority to ratify the construction of the Gelburds' rooftop shed. Salvatore refers to the "Doctrine of the Last Antecedent Clause" in arguing that the phrase in the condominium declaration, "without the prior written consent of the Board," applies only to the immediate preceding clause "no additions, alterations or improvements shall be made by a Unit Owner to his Unit." (See *Tondre v. Pontiac School District No. 105* (1975), 33 Ill. App. 3d 838, 342 N.E.2d 290.) Therefore, Salvatore maintains, the board may consent only to alterations by a unit owner to the owner's unit, and not to any alterations to the common elements. Salvatore also argues that a contrary holding renders section 7.01(a) of the declaration redundant and superfluous. Section 7.01(a) is noted in section 4.09(b) as an exception to section 4.09(b). Section 7.01(a) specifies that a common wall between two units owned by the same unit owner may be removed or altered with board approval. Salvatore argues that the situation described in section 7.01(a) is the one and only instance in which the board may approve an alteration to a common element.

The Gelburds contend, and the trial court agreed, that under the terms of the condominium declaration, the board had the authority to ratify the construction of the Gelburds' rooftop storage shed. Viewing

the instrument as a whole, we do not believe that the trial court erred in its interpretation of the condominium declaration. (*Shelton v. Andres* (1985), 106 Ill. 2d 153, 478 N.E.2d 311.) Throughout the declaration, numerous references are made to the board's authority and responsibility to administer the property. For example, the board is vested with the authority to adopt and amend such reasonable rules and regulations as it may deem advisable. With respect to the common elements, the board has among other powers the authority to lease or grant licenses, concessions or contracts to any part of the common elements. The board may also consent to obstructions or storage otherwise prohibited in the common elements. In consideration of all its language and provisions, we believe that one of the purposes of the condominium declaration was to give the board broad powers to administer the cooperative aspect of the condominium ownership.

■■ ■ A strict application of the plaintiff's rules of grammar and construction effect a technically literal construction of section 4.09(b) of the condominium declaration. We are concerned, however, with the natural and obvious import of the language, and not a forced interpretation. (*Pennsylvania R.R. Co. v. Chicago, Rock Island & Pacific R.R. Co.* (1958), 12 Ill. 2d 574, 147 N.E.2d 363.) In the present case, we believe that the phrases in section 4.09(b), "without the prior written consent of the Board," and "the Board may *** [r]atify the action taken," naturally refer to additions, alterations or improvements to common elements as well as unit elements. The language of section 4.09(b) comports with the tenor of the language throughout the condominium declaration which in effect gives overriding powers of administration to the board. Viewing the instrument as a whole, the trial court's interpretation of section 4.09(b) was fair and reasonable. (*Shelton v. Andres* (1985), 106 Ill. 2d 153, 478 N.E.2d 311.) For these reasons, the ruling of the trial court is affirmed.

Affirmed.

McMORROW, P.J., and JOHNSON, J., concur.