Tau Delta Phi, Tau Eta Chapter, Building Association, an Illinois Not for Profit Corporation, Plaintiff-Appellee, v. Sophie Gutierrez, Defendant-Appellant.

**Gen. No. 51,756.**

First District, Second Division.

November 10, 1967.

John H. Galgano and Patrick A. Barton, of Chicago, for appellant.

Morgan, Halligan, Lanoff & Cook, and James A. Forkins, of Chicago (Samuel M. Lanoff, John A. Cook and Edmund Gronkiewicz, of counsel), for appellee.

MR. JUSTICE BURKE delivered the opinion of the court:

This was a complaint for specific performance of an option for the sale of real estate owned by defendant. A summary decree was entered for plaintiff and defendant appeals.

On January 22, 1960, plaintiff Tau Delta Phi, as lessee, and defendant Sophie Gutierrez, as lessor, entered into

a lease agreement covering the premises at 6000 North Sheridan Road in Chicago. The realty, improved with a two-story dwelling and a two-car garage, was to be used as a fraternity house for Loyola University students. The term of the lease was to run through January of 1963 at a monthly rental of $350. The lease was drawn in the presence of defendant and her attorney, the president and the secretary of plaintiff, and Mr. James Forkins, attorney for plaintiff.

In addition to the standard form of lease, a rider was attached giving plaintiff an option to purchase the premises for the sum of $51,500 upon due notice to defendant. The agreement provided that upon the exercise of the option the parties were to execute a contract for the sale at the stated price, the terms of which were to be $10,000 in cash and a purchase money mortgage in the amount of $41,500 with interest at 6 percent per year, payable monthly over a fifteen year period. The rider also provided for the payment by defendant of $350 to a real estate broker as commission for obtaining the lease and the payment of an additional commission of $1,500 if the option was exercised.

On January 22, 1963, nine days prior to the expiration of the 1960 agreement, a second lease and option was executed by the parties. It is upon this latter document that the instant suit is predicated. The second lease and option differed from the first in the following respects: the term of the lease was to run through May of 1966, the end of the year's school term; the rent was increased from $350 to $400 per month; the purchase price under the option was reduced to $50,000 and the mortgage amount reduced to $40,000; and the real estate broker's commission was eliminated. The option was to be exercised, if at all, at any time during the duration of the lease before January 1, 1966. Both the first and the second leases described the premises demised as "6000

27

North Sheridan Road"; the 1960 option reserved the right to the lessee to insert the legal description, whereas the 1963 option made no such reservation.

On December 27, 1965, the members of plaintiff voted to exercise the option and authorized attorney James Forkins, who had represented plaintiff in the negotiations for the two leases and options, to exercise the option on behalf of plaintiff. At the same time, a check was drawn to the order of Mr. Forkins, as attorney for plaintiff, covering the $10,000 cash payment called for upon the exercise of the option. Mr. Forkins then sent a letter to defendant on December 28th stating plaintiff was thereby exercising the option, but defendant failed to respond to the communication. A second letter was sent to defendant on January 10th urging defendant to cooperate, but defendant again failed to respond. This complaint for specific performance was filed on January 27, 1966.

Defendant filed a motion to strike the complaint alleging that the option agreement and lease failed to definitely describe the real estate involved; that the language of the option agreement was so uncertain and ambiguous that a court of equity could not decree its specific performance; that the contract for sale which was contemplated by the option and which the complaint sought to have executed in accordance therewith contained terms which were not ascertainable until some later date; and that the alleged notice of exercise of the option lacked mutuality and was insufficient to bind plaintiff to the execution of the contract for sale. The motion to strike was dismissed and defendant was ordered to file an answer.

Defendant's answer stated that the legal description set forth in the complaint encompassed the common addresses of 6000, 6002 and 6004 North Sheridan Road, not simply 6000 North Sheridan Road as alleged in the

complaint; that the plaintiff's attorney drew the lease and option in question contrary to the agreement entered between the parties in that the purchase price should have been $51,500; that the option agreement is ambiguous and uncertain in that the seller is required to give a mortgage to the buyer; that the monthly mortgage payment item in the document was left blank; and that the alleged notice of exercise of the option was insufficient to bind plaintiff inasmuch as it was not signed by plaintiff through its duly authorized officers. The answer further alleged that in June of 1965, the officers of plaintiff advised and informed defendant that plaintiff had no intention of exercising the option; the answer also denied that plaintiff tendered the down payment in accordance with the option requirements.

Plaintiff thereafter filed a motion for summary decree based upon the affidavit of its president, James Moreno, stating facts relating to the exercise of the option on December 28, 1965, and the tender of the $10,000 down payment as contemplated by the option. Also attached to the motion was plaintiff's written authorization to Mr. Forkins to exercise the option to purchase.

Defendant filed a counter-affidavit stating that she was unacquainted with Mr. Moreno and that she never had dealings with him; that on or about January 22, 1963, she negotiated for the 1963 lease with John Hannan, plaintiff's then secretary, and it was specifically agreed that the new lease would be exactly in accordance with the 1960 lease except that the duration of the lease and the monthly rental would be changed; that she relied upon the understanding thus arrived at and signed the 1963 lease without a close examination of the same; and that it was only after the present controversy arose that she learned for the first time that the option price was $50,000 instead of $51,500. The counter-affidavit further alleged that on or about June 1, 1965, she had

been informed by plaintiff's then president, Thomas Murray, that plaintiff had no intention of exercising the option and that John Hannan, by telephone, confirmed this fact and advised defendant to make plans for the premises accordingly; that on June 23, 1966, John Hannan confirmed the aforesaid telephone conversation of 1965, but that Hannan said he would not execute an affidavit to that effect. It was further alleged that the purported notice of exercise of the option was not accompanied by a written authorization of plaintiff; that on November 17, 1964, defendant assigned the lease to a savings and loan association as additional security for a mortgage note; that defendant was 73 years old, not conversant with the English language and relied upon plaintiff to draw the 1963 lease in accordance with the oral agreement reached with plaintiff's officer; and that pursuant to plaintiff's statement that the option would not be exercised, defendant incurred considerable expense in having plans prepared in connection with the future use of the premises and sold her home in Central America in order to raise funds necessary to carry out the plans.

Defendant caused depositions to be taken from Thomas Murray and John Hannan. It was stipulated between the parties to this action that the depositions could be used as evidence at the hearing on the motion for a summary decree. John Hannan testified that he was secretary of plaintiff from November of 1959 to May 31, 1965. To the best of his recollection he did not receive a telephone call from defendant in June of 1965 advising him of a conversation between defendant and Thomas Murray concerning plaintiff's unwillingness to exercise the option. Hannan testified that defendant came to his business office on June 3, 1966, and asked him to execute a prepared affidavit concerning the alleged telephone conversation, but that he told defendant that the matters

30

contained in the affidavit were untrue and that he would not sign it. Hannan further testified that on June 9, 1966, he had a discussion with defendant's son at which time he again refused to sign the affidavit. Hannan stated that defendant and her son threatened to expose him before his employer; that they stated they had influential friends, who were politicians and judges, who said defendant had a "very good case" against plaintiff; and that another friend who was the real estate editor of a local newspaper was interested in the case and "wanted to blow the whole thing up in the city newspaper." Concerning the negotiations for the 1963 option and lease, it was further testified by Hannan that it was agreed upon that the duration of the lease and the monthly rentals would be different from the 1960 lease, that the $1,500 broker's commission would be eliminated from the 1963 lease, and that the purchase price under the option was to remain the same as in the 1960 lease, namely, $50,000, the amount due defendant after deduction of the broker's commission.

Thomas Murray testified that he was the newly elected president of plaintiff at the time Hannan resigned as secretary in May of 1965. He stated that he was authorized by plaintiff sometime in June of 1965 to discuss with defendant the rental of the premises and the exercise of the option. It appears the plaintiff found the building somewhat difficult to maintain and too expensive at the time for its budget. Murray stated he discussed the situation with defendant and testified, "I never had a conversation with Mrs. Gutierrez in which I agreed that the option would be released without her also cancelling the lease." The conversation was had in the presence of defendant's son, William, who suggested that "things be left as they are." Murray further testified that in January of 1966 defendant requested him to pre-date a letter as of June of 1965 wherein Murray was to state

31

that plaintiff relinquished its right to exercise the option. Murray refused, stating he would then be liable to legal action by plaintiff. After the June 1965 meeting between defendant and Murray, it appears plaintiff continued to occupy the premises and to pay the rents required under the lease. It further appears that nothing was thereafter done or said with respect to the lease or the option agreement until December 28, 1965, when plaintiff exercised the option.

Also filed by defendant were the affidavits of her son and two grandsons to the effect that John Hannan was presented with a form of affidavit which Hannan stated contained true facts concerning plaintiff's intention not to exercise the option, but that Hannan stated he was unable to sign it because he had been advised by his attorney not to sign anything in connection with the case, and that Hannan stated he recalled his conversation with defendant in June of 1965 which was to the effect that plaintiff was not going to exercise the option.

Defendant maintains on this appeal that an issue of fact existed as to whether or not plaintiff abandoned its right to exercise the option, or whether the parties had mutually rescinded or cancelled the option, and that the trial court was consequently without authority to enter a summary decree; that the description of the property contained in the lease was too indefinite to allow enforcement of the option agreement; and that the notice of exercise of the option was not binding upon defendant inasmuch as it did not bind plaintiff.

Defendant's first contention, that the matters contained in the pleadings, affidavits, and depositions raised an issue of fact and that the trial court therefore erred in entering a summary decree, is without merit.

■■ ■■ The purpose of the summary judgment proceeding is to test whether there exists a genuine issue of material fact and to summarily dispose of those cases

wherein no such issue exists, thereby avoiding congestion of trial calendars and the expense of unnecessary trials. Ill Rev Stats 1965, Ch 110, Par 57; Allen v. Meyer, 14 Ill2d 284, 292, 152 NE2d 576; Giampa v. Sunbeam Corp., 68 Ill App2d 425, 429, 216 NE2d 233. Whether an issue of fact exists is to be determined from the pleadings, depositions, admissions and affidavits, if any, on file in the case. Giampa v. Sunbeam Corp., 68 Ill App2d 425, 216 NE2d 233. It clearly appears from the record that there exists no genuine issue as to any material fact.

██ Defendant claims there exists either a question whether the parties hereto mutually agreed to rescind the option agreement or a question whether plaintiff abandoned the option. The allegation is made that Thomas Murray informed defendant that plaintiff "had no intention of exercising the option to purchase" without any amplification of the context of the conversation between defendant and Murray. The allegation is also made that defendant made "plans" for the future use of the premises pursuant to the statement made by Murray, but again fails to allege what plans were made. These allegations amount to no more than conclusions of fact, unsupported by any facts admissible in evidence as required by Supreme Court Rule 191. A mere allegation that a triable issue of fact exists does not create such an issue.

██ The uncontradicted evidence given by Thomas Murray is that he never discussed the release of the option without discussing an immediate cancellation of the lease as well. When the question of the cancellation of the entire agreement arose, defendant's son, in defendant's presence, suggested that "things be left as they are." Although the reason given by Murray for plaintiff's election to discuss with defendant an immediate cancellation of the lease and option in June of 1965 was its financial difficulties, plaintiff nevertheless continued for

six months after defendant's refusal to cancel the lease to pay the monthly rental required under the lease which was accepted by defendant without question. Plaintiff furthermore continued to occupy the premises thereafter and it appears that nothing was done or said with regard to the cancellation of the lease or the option agreement until plaintiff elected to exercise the option in December of 1965. The defendant was unwilling to cancel the agreement when plaintiff offered to do so in June of 1965 and the lease and option remained in full effect thereafter and was acted upon by both parties; plaintiff was therefore within its rights under the agreement to exercise its option to purchase in December of 1965.

The cases cited by defendant in support of her position in this regard are inapposite to the factual situation herein. They involve either a mutual rescission or alteration of the agreement, or facts showing an outright repudiation of the contract, which is not true here. See Fisher v. Michigan Square Bldg. Corp., 328 Ill App 143, 65 NE2d 473; Printing Machinery Maintenance, Inc. v. Carton Products Co., 15 Ill App2d 543, 147 NE2d 443; Almar Forming Machine Co. v. F. & W. Metal Forming Machinery Co., 308 Ill App 151, 31 NE2d 415; Jones v. Dove, 382 Ill 445, 47 NE2d 447; Bonde v. Weber, 6 Ill2d 365, 128 NE2d 883.

Defendant's second contention is that the provisions of the option agreement are too uncertain to permit a court of equity to decree specific performance thereof. We disagree.

 The first point raised is that the legal description of the premises ordered to be sold included the street addresses of 6000, 6002 and 6004 North Sheridan Road, whereas the agreement covers only 6000 North Sheridan Road. It appears that the 6000 North Sheridan Road address is the mailing address of the property and was employed by defendant when the 1960 lease was drawn

34

by her attorney. The property is improved with a two-story dwelling containing twelve rooms or more and a two-car garage, and plaintiff has been in continuous possession thereof since 1960. The evidence is clear that the property referred to in the agreement and that referred to in the complaint and the decree are one and the same. See Macy v. Brown, 326 Ill 556, 563, 158 NE 216.

Secondly, defendant claims the terms of payment of the mortgage are not fully set out in the option. However, the option provides for a $40,000 mortgage with interest of 6 percent per year amortized over fifteen years, including taxes. The monthly payments are, therefore, easily ascertainable.

Thirdly, defendant claims the agreement is ambiguous concerning the one who is to give the mortgage. The agreement has an obvious clerical error in calling for the lessor to deliver a mortgage to the lessee. Clearly the intent is that the lessee shall execute and deliver the mortgage. As stated in Welsh v. Jakstas, 401 Ill 288, 82 NE2d 53, at pages 294 and 295:

> "The law enters into and forms a part of every contract, and a contract is sufficiently certain and definite to be enforcible if the court is enabled from the terms and provisions thereof, under proper rules of construction and applicable principles of equity, to ascertain what the parties have agreed to do. We are of the opinion *the plain common-sense meaning* of the option should prevail." (Emphasis supplied.)

The remaining matters urged by defendant on this point have been considered and are found to be without merit.

Defendant finally maintains that the notice of exercise of the option was sent by plaintiff's attorney, without any evidence of authority on his part to do so, and was consequently not mutually binding upon the parties. Plaintiff's

35

attorney, Mr. Forkins, represented plaintiff with regard to the 1960 and 1963 leases and options, the letter exercising the option was signed by him as "General Counsel . . . Attorney for Lessees," and defendant did not at any pertinent time question the authority of Mr. Forkins. to act for plaintiff.

Because we think that the court was right in allowing plaintiff's motion the decree is affirmed.

Decree affirmed.

LYONS, P. J. and BRYANT, J., concur.