258

IRVING M. GREENBERG, Plaintiff-Appellee, *v.* SEYMOUR GOODMAN *et al.*, Defendants.—(SEYMOUR GOODMAN *et al.*, Defendants-Appellants.)

First District (1st Division)   No. 76-169

Opinion filed August 22, 1977.

William J. Harte, Ltd., of Chicago, for appellants.

Hoffman & Davis, of Chicago (Edward J. Hladis and David I. Hoffman, of counsel), for appellee.

Mr. JUSTICE O'CONNOR delivered the opinion of the court:

Plaintiff, Irving M. Greenberg, sued Seymour Goodman, Jordan H. Kaiser, Walter Kaiser, Mildred W. Goldberg, as Executor of the Will of William Goldberg, deceased, and in her own person, Home Builders of America, Inc., Sayre, Krako & Company and Michigan Avenue National Bank for specific performance of an agreement for the purchase of an interest in a limited partnership and for other relief. Seymour Goodman, Jordan H. Kaiser, Walter Kaiser, Home Builders of America, Inc. and Michigan Avenue National Bank (hereinafter defendants) answered plaintiff's complaint, alleged affirmative defenses and counterclaimed

against plaintiff.[1] Plaintiff's motion for summary judgment was granted and defendants appeal, arguing that there is a genuine material issue of fact which precluded the entry of summary judgment and that the agreement was ambiguous.

Seymour Goodman, Jordan H. Kaiser, Walter Kaiser, William Goldberg and H. S. Kaiser Company formed a limited partnership on December 1, 1967, to hold the beneficial interest in certain realty held in trust and to develop that realty as a low income housing project. Subsequently, Home Builders of America, Inc., and Mildred W. Goldberg were substituted as limited partners for H. S. Kaiser Company and William Goldberg, respectively. The partnership agreement provided that Seymour Goodman and Jordan H. Kaiser were the "Principal Partners" or general partners solely responsible for the development of the project. It also provided that "all decisions shall be by concurring vote of the Principal Partners and owners representing not less than 60% of the beneficial interest of the trust." The remaining partners were "silent" partners.

Plaintiff and Seymour Goodman, Jordan H. Kaiser, Walter Kaiser, William Goldberg and Home Builders (Sellers) entered into an agreement for the sale of a 95% interest in the partnership on July 15, 1969. Plaintiff was made a substituted limited partner effective January 1, 1969, by amended partnership certificate executed by the general partners on August 6, 1969. Plaintiff was entitled to his distributive share of the partnership's items of loss and deduction pursuant to sections 702(a)(8) and (9) of the Internal Revenue Code for the period January 1, 1969, through the completion date. Sellers were to receive a total of $256,500 for the interest transferred. Plaintiff gave Sellers his check for $120,000 and his note for $136,500 and assigned his 95% interest in the partnership as security. The check, endorsed by Sellers, and the note were placed in escrow with the Michigan Avenue National Bank. Subsequent payments by plaintiff were also deposited under the terms of the escrow agreement. The remaining 5% interest in the partnership was to be purchased by plaintiff for $13,500 upon the completion date. The housing project was to be completed on or before April 30, 1970, and approved by the Federal Housing Administration (FHA). All of the funds deposited in escrow were to be disbursed upon completion, unless plaintiff or his attorneys notified the escrow holder not to disburse the funds. Between the completion date and the date of the FHA's approval of the transfer of the remaining partnership interest, plaintiff was to have all power, duty and authority of the general partners and Sellers would be limited partners. If

[1] Sayre, Krako & Company was dismissed from the lawsuit on its motion. Mildred Goldberg, as executor, was also dismissed. Neither is a party to this appeal; nor is there anything in the record indicating that Mildred W. Goldberg personally is a party to this appeal.

Sellers failed to complete the housing project on time or for the failure of Sellers to perform other duties, plaintiff had the right, upon delivery of notice in writing to Sellers, to reconvey all interest in the partnership, the trust and the project. Sellers would return to plaintiff his note and all sums paid. Sellers were to indemnify plaintiff for any liability or expense in connection with the partnership, trust and project.

The project was not completed by April 30, 1970. Plaintiff gave Sellers notice of his intent to resell all of his interest in the partnership on May 19, 1970. On July 13, 1970, a supplemental agreement was executed which, *inter alia*, extended the completion date to December 31, 1970, and declared that plaintiff's previous notice of intent to resell was of no effect. The project was not completed by December 31, 1970, and plaintiff notified Sellers of his intent to resell on January 11, 1971. Sellers offered plaintiff a full refund of all deposits in escrow, cancellation of his note and interest on his note from the date of deposit. Plaintiff refused this offer, claiming not only a return of all considerations, but also that he was entitled to all of the benefits that a 95% interest holder in the partnership would be entitled to under the Federal income tax law.

On July 20, 1971, plaintiff filed a complaint for specific performance of his agreement. He alleged that the agreement provided for a completion date for the project, but that the project had not been completed on time. Pursuant to the agreement, plaintiff was entitled to resell his interest in the partnership after notifying Sellers. Plaintiff was ready, willing and able to resell his interest in the partnership, gave Sellers notice of his intent to resell and had tendered delivery to Sellers. Sellers refused to deliver the funds plaintiff had paid and to execute and deliver instruments to indemnify plaintiff.

In their answer, defendants admitted that there was an agreement, but denied that plaintiff had gained a then present interest in the partnership. Defendants alleged that the agreement was an agreement to purchase and that plaintiff had only assigned a future interest in the partnership to secure his promise to pay defendants. Defendants admitted that the project was not completed by December 31, 1970, but alleged that they were not at fault because completion was delayed by labor disputes and by plaintiff's interference, because of his control of a 95% interest in the partnership, with the management of the project. Defendants also counterclaimed against plaintiff, alleging that he had no present interest in the project, had diminished the value of the project and had wrongfully appropriated a tax loss of the partnership.

Plaintiff answered the counterclaim, alleging that he had a limited partner's interest in the partnership from the date of the agreement, had paid for his interest in the partnership and had not interfered with the

management of the project and that the failure to complete the project was defendants' fault.

Plaintiff's motion for summary judgment was supported by plaintiff's affidavit and by defendants' answers to certain interrogatories. Defendants resisted the motion on the grounds that material issues of fact existed and that the agreement was ambiguous.

Plaintiff's motion for summary judgment was granted and judgment was entered against defendants on their counterclaim.

Defendants argue that plaintiff caused the failure to complete the housing project on time. They assert that a review of the record reveals that there is a genuine material issue of fact about plaintiff's participation in and interference with the management of the project. Defendants replied to one of plaintiff's interrogatories stating:

> "The plaintiff, on numerous and diverse occasions exerted affirmative influence upon the general partners management decisions by continually inquiring about and attempting to influence decisions relative to the income tax situation and the progress of the project and making conflicting demands upon the managing general partners. During the period of construction, Seymour Goodman, one of the general partners, received in excess of a dozen such demands, which demands were initiated by calls from the plaintiff. During the same period of time Jordan Kaiser another general partner received at least three dozen telephone calls from plaintiff regarding the same subject matter and the conversations included completion problems, tax problems, labor problems and related matters. In addition during these conferences plaintiff said he wished to remain out of the partnership and then would change his position, give advice and say he contemplated consumating [*sic*] the parties agreement."

Additionally, defendants' affidavits resisting plaintiff's motion for summary judgment stated that plaintiff "attempted to influence" decisions regarding the project. They contend that these statements demonstrate that there is a material issue of fact concerning plaintiff's active involvement in the management of the project and consequent fault for the failure to complete the project.

Plaintiff argues that the original partnership agreement provided that "the entire management, control and operation of this project shall be under the sole responsibility, direction and authority" of the principal partners. The principal partners, Seymour Goodman and Jordan H. Kaiser, not plaintiff, were the only persons responsible for the management of the project. Plaintiff contends he made 48 telephone calls to the principal partners but that those calls were made over a period of

16 months. He argues that any prudent person who had paid $120,000 and had promised to pay an additional $136,000 would make inquiries about the project in which he had invested. Indeed, plaintiff argues that he had a right to inquire about the project. He contends that defendants' statements do not raise an issue of fact about his involvement in the project's management or about his responsibility for the failure to complete the project.

■■ Our review of the record indicates that the trial court was correct in determining that there was no genuine material issue of fact concerning plaintiff's fault for the failure of the timely completion of the project. The agreement clearly makes the general partners, Seymour Goodman and Jordan H. Kaiser, solely responsible for the project. We disagree with defendants' argument that their affidavits in opposition to the motion for summary judgment stating that "plaintiff specifically attempted to influence the decisions" created an issue of material fact. The statement, like their contention that plaintiff's phone calls were the cause of delay, is a mere conclusion. No facts showing either how plaintiff "specifically attempted to influence the decisions" or how his phone calls delayed the project are stated in support. Conclusions, unsupported by facts admissible in evidence, do not create a genuine material issue of fact. *Tau Delta Phi, Tau Eta Chapter, Building Association v. Gutierrez* (1967), 89 Ill. App. 2d 25, 232 N.E.2d 205.

Defendants also contend that the agreement was ambiguous both as to the kind of interest plaintiff had in the partnership and as to the time of the acquisition of that interest. They argue that if plaintiff did acquire an interest in the partnership on July 15, 1969, the day the agreement was executed, then it is unclear what kind of interest plaintiff did acquire. Plaintiff, according to his own contentions, received a 95% interest in the partnership on July 15, 1969. Defendants contend that if plaintiff did acquire this interest on that day, then he was not a limited but a principal partner under the provisions of the agreement.

The original partnership agreement provides: "All decisions shall be by concurring vote of the Principal Partners and owners representing not less than 60% of the beneficial interest" in the partnership. It also provides that:

> "8. Subject to the provisions of the aforementioned Trust Agreement and FHA regulations wherever approval, consent, direction or acquiescence is required under the terms of this agreement for and on behalf of the Partnership, such determination and power of direction shall be vested in such Principal Partners that own or represent not less than 60% of this Partnership acting jointly relating thereto."

Defendants argue that under these two provisions plaintiff, if he owned a

95% interest in the partnership, was a principal partner with control over the decisions of the partnership and therefore was responsible for the failure to complete the project. Conversely, if plaintiff denies he had control of the partnership, then he could not have acquired an interest on July 15, 1969.

Defendants also argue that the agreement is unclear as to when plaintiff was to acquire an interest in the partnership. They contend plaintiff never paid defendants anything toward the purchase price of his interest, because the check plaintiff drew to defendants' order was endorsed by defendants only as a courtesy to plaintiff, so that a new check payable to the escrowee would not have to be drawn. Consequently, they argue, they did not have the money; it was held by the escrowee. They also argue that the provision for the escrow of the $120,000 shows an intent to sell a future interest to plaintiff, as does the provision that "buyer ultimately will acquire a 100% interest" in the partnership and the provision that "buyer is desirous of acquiring all of sellers' interest." In sum, they conclude that the agreement was to sell plaintiff a future interest in the partnership.

Plaintiff, on the contrary, contends he acquired a a 95% interest in the partnership on July 15, 1969, and that this interest was a limited partnership interest. The agreement provided:

"1. *Recitals*:

* * *

(e) Buyer is desirous of acquiring all of Sellers' interest in the Partnership, the Trust and the Premises and Sellers are desirous that Buyer make such acquisition all on the terms and conditions hereinafter set forth.

2. *Transfer of Partnership Interest*:

Each of Sellers set forth in this Paragraph 2 hereby sells, assigns and transfers to Buyer the partnership interest in the Partnership set opposite his respective name:

| SEYMOUR GOODMAN | - 40.783% | limited partnership interest |  |  |
|---|---|---|---|---|
| JORDAN H. KAISER | - 28.308% | " | " | " |
| WALTER KAISER | - 18.712% | " | " | " |
| WILLIAM GOLDBERG | - 7.197% | " | " | " |

and Buyer hereby accepts such assignments and transfers and agrees to be bound as such a limited partner. The Partnership hereby consents to the admission of Buyer as a substituted limited partner and the general partners of the Partnership shall forthwith prepare and file for record an amended certificate of limited partnership to memorialize the admission of Buyer as such a limited partner.

Buyer shall be deemed to have accepted such 95% interest in the Partnership and become a substituted limited partner effective January 1, 1969.

3. *Payment for Partnership Interest*:

Buyer shall pay Sellers, as a purchase price for said partnership interest acquired by him, the sum of Two hundred fifty six thousand five hundred and 00/100 dollars ($256,500.00). Buyer has paid Seller, contemporaneously with the execution hereof, the sum of One hundred twenty thousand and 00/100 dollars ($120,000.00) on account of said purchase price and agrees to pay and satisfy the remainder of the purchase price by making payments in accordance with the tenor of the note in the amount of One hundred thirty six thousand five hundred and 00/100 dollars ($136,500.00) delivered to Sellers contemporaneously with the execution hereof. A true and correct copy of said note is attached hereto as Exhibit H.

4. *Completion of Project*:

On or before April 30, 1970, Sellers shall cause (i) Project No. 071-55105 LDT to be completed in accordance with the plans and specifications therefor approved by FHA; * * *

* * *

8. *Additional Partnership Interest*:

Upon the Completion Date Sellers shall sell, assign and transfer to Buyer all of the interest in the Partnership not transferred to Buyer pursuant to paragraph 2 hereof. Buyer shall pay as a purchase price for such partnership interest the sum of Thirteen thousand five hundred and 00/100 dollars ($13,500.00) which amount shall be paid in accordance with the tenor of Buyer's note to be dated on the Completion Date and to be delivered to Sellers (i) on such day or (ii) if FHA approval of such transfer is required, upon the day of such approval; a copy of which note is attached hereto as Exhibit I. * * *

From Completion Date and until FHA approves of the transfer of the remaining 5% interest in the Partnership, the Buyer shall be vested with all the powers, duties and obligations of the General Partners of the Partnership and Sellers shall have the power, duties and obligations of limited partners in the Partnership.

9. *Intention of the Parties*:

It is the intention of the parties that Buyer ultimately will acquire a 100% interest in the economic enjoyment of the Premises, subject only to those claims, liabilities and exceptions set forth in clause (iv) of Paragraph 4 and possible denial of approvals by FHA

described in paragraph 8 hereof, for a total purchase price of Two hundred seventy thousand and 00/100 dollars ($270,000.00). * * *

        * * *

12. *Additional Remedy of Buyer*:
  If—
      (a) Sellers do not perform their undertakings
      (i) set forth in paragraph 4 within the time set forth therefore; or

        * * *

Buyer, in addition to all other remedies available to him, shall have the right, exercisable by notice in writing to Sellers delivered within 30 days of the day upon which such right accrues, to resell all interest in the Partnership, the Trust and the Premises acquired hereunder in exchange for the consideration paid by him therefor and Sellers shall deliver to Buyer, against Buyer's delivery to Sellers of appropriate instruments of reconveyance of all interest in the Partnership, the Trust and the Premises acquired pursuant hereto,—
      (x) a certified or cashier's check in the amount of all sums paid by Buyer to Sellers pursuant hereto or in payment of any note delivered hereunder;
      (y) any note delivered by Buyer to Sellers hereunder;
      (z) appropriate instruments of indemnity wherein Sellers agree to indemnify and save Buyer harmless from any and all liability or expense in connection with the Partnership, the Trust, the Premises and the Project."

In addition to these provisions, the limited partnership certificate was amended to read in part:
    "Section IV of the Limited Partnership Certificate recorded as document No. R—685590 in the Office of the Recorder of Deeds of Will County, Illinois on April 16, 1968 is hereby modified by the addition of the following named Limited Partner:
      Irving M. Greenberg, M.D. (Limited Partner)
      1194 Fairfield
      Glencoe, Illinois."

Plaintiff argues that under the above provisions he acquired a limited partnership interest on July 15, 1969, when the agreement was executed by the parties. We agree.

  ■■ It is clear from the explicit terms of the agreement that upon its execution by the parties 95% of defendants' limited partnership interests were then and there sold and conveyed to plaintiff, who paid defendants $120,000 and gave his note for $136,500, all as required by the agreement. Recognizing this, defendants then amended the partnership certificate to

add plaintiff as a limited partner. The agreement was a present sale of a 95% interest. The only future sale was as to the remaining 5%, which was to be sold to plaintiff on the completion date. The provision in the agreement giving plaintiff the right to resell the 95% interest if the project was not completed in time further emphasizes that the sale of the 95% interest was a present and not a future sale. One cannot resell if one has not first bought.

The acquisition of defendants' 95% limited partnership interests did not convert plaintiff into a principal partner. Under the express provisions of the agreement, plaintiff was not to be vested with the powers of a principal partner until the date of completion. Under the agreement, Seymour Goodman and Jordan Kaiser, the principal partners, were solely responsible for the management, control and operation of the housing project. None of the provisions in the agreement relied on by defendants changed their responsibilities.

The agreement is unambiguous. Consequently, construction of it was unnecessary, improper and unwarranted. *Stevenson v. ITT Harper, Inc.* (1977), 51 Ill. App. 3d 568, 366 N.E.2d 561; *Nitrin, Inc. v. Bethlehem Steel Corp.* (1976), 35 Ill. App. 3d 577, 594, 342 N.E.2d 65, *appeal denied*, 63 Ill. 2d 552.

The project was not completed by the designated date. The delay was not due to plaintiff. The trial court correctly granted summary judgment for plaintiff.

The judgment order of the circuit court of Cook County is affirmed.

Affirmed.

GOLDBERG, P. J., and McGLOON, J., concur.