AZL RESOURCES, INC., et al., Plaintiffs-Appellants, v. GLENN S. BROMAGEN, Defendant-Appellee.

First District (3rd Division)    Nos. 79-591, 79-716 cons.

Opinion filed December 5, 1979.

E. C. Heininger, Alan N. Salpeter, and Richard D. Streicker, all of Mayer, Brown & Platt, of Chicago, and George D. Crowley and Richard L. Manning, both of Crowley, Fuller & Manning, of Chicago, for appellants.

Max Wildman, of Wildman, Harrold, Allen & Dixon, of Chicago, and Ronald Butler and Gerald G. Saltarelli, both of Winston & Strawn, of Chicago, for appellee.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

Plaintiffs, AZL Resources, Inc., an Arizona corporation, and Rufenacht, Bromagen & Hertz (hereinafter RBH), an Illinois subsidiary of AZL, appeal from an order of the trial court dissolving a permanent injunction which had been entered against defendant, Glenn Bromagen. The injunction enforced a post-employment restrictive covenant contained in an employment contract between the parties. It also prevented defendant from direct or indirect competition with plaintiffs for a period of three years at the conclusion of defendant's five-year term of employment.

In March 1969, defendant, along with Rufenacht, Hertz and others, joined to form RBH. It was to be a commodity futures brokerage firm in Chicago. RBH engaged primarily in the business of trading livestock futures contracts on the Chicago Mercantile Exchange. Defendant functioned as a floor broker on the exchange and became nationally recognized as the premier cattle broker in the commodities field. In 1972 Bromagen and his associates decided to diversify their interests by selling the commodities operation to a firm engaged in cattle and agricultural enterprises. In January 1973, the principals of RBH agreed to sell their capital stock to AZL and received in return $17.1 million over a five-year period. Defendant thus received approximately $3.4 million for his interest. As part of the transaction, each principal, including defendant, was required to execute an employment agreement. Defendant's agreement provided that he would continue to work for RBH for a period of five years and would receive an annual salary of $135,000 plus expenses. At the end of five years, the parties were to renegotiate defendant's salary. If the parties could not agree on continued employment, defendant would sever all connections with RBH, and would not compete for three

years. The contract provided that the agreement could not be assigned and, as will be developed more fully, that defendant could terminate the contract if control of either RBH or AZL was acquired subsequently by another business entity.

While RBH produced income, AZL as a whole lost money and needed to attract capital to continue operations. In December 1977, AZL negotiated for the required capital with Procor, Inc. In February 1978, Procor purchased $10,000,000 of subordinated convertible debentures issued by AZL. AZL, in turn, agreed to give Procor one-third control over the AZL board of directors, one-half control of its executive committee, and the right to approve the president and chairman of the board of AZL. The debentures, upon conversion to AZL stock, would give Procor 40% of the total AZL stock. Procor's president became president and chief operating officer of AZL, and three Procor directors were elected to the AZL board of directors. Within seven months, Michael Geddes, Chairman of the AZL board, was ousted in favor of the Procor chairman. Procor moved its executive offices to Arizona and occupied quarters in the same building as AZL.

Meanwhile in 1977, AZL had attempted to negotiate a renewal employment agreement with defendant. AZL submitted several offers to defendant, but he rejected them. On December 28, 1977, defendant resigned. In February 1978, AZL made its final payment to defendant under the original stock purchase agreement. On April 11, 1978, after the finalization of its agreement with Procor, AZL received a letter from defendant informing it that he considered his employment agreement terminated and that he intended to compete with RBH in the commodities brokerage business.

Plaintiffs brought the present action seeking declaratory and injunctive relief. Defendant's answer recited that Procor had taken control over AZL and that the change of control permitted defendant to terminate the employment contract. The trial court issued a preliminary injunction prohibiting defendant from competing with his former employers. Defendant was permitted, however, to trade on the floor of the exchange for his own account and those of others as long as he did not solicit customer business.

In February 1979, the trial court conducted a full trial on the merits. Defendant stipulated that he would not challenge the validity, scope or duration of the restrictive covenant contained in the employment contract. At trial, the court heard evidence regarding the change of control and of the parties' intent in inserting such a provision in the contract. Defendant testified that he and his associates wished to be affiliated with a company which had been engaged in the cattle business and had a good reputation. AZL was such a company. Defendant had

rejected association with other brokerage firms not directly involved with cattle and agricultural enterprises. At the conclusion of the trial, the court ruled that managerial control over AZL had changed upon execution of the debt financing agreement with Procor, but that the change of control had no adverse effect upon defendant because he had already resigned from RBH. The trial court issued a permanent injunction against defendant, but conditioned its issuance upon a showing that AZL had not recouped its initial investment in RBH and that there was a continuing necessity for the injunction in order to adequately protect AZL's investment in RBH. At a subsequent hearing, the trial court heard extensive expert testimony from both sides as to whether AZL had recouped its investment in RBH. Because of our view of the matter, it is unnecessary to set forth that evidence. After hearing the evidence, the trial court concluded that AZL had recouped its investment in RBH and accordingly dissolved the injunction.

Plaintiffs contend on appeal that the trial court erred in dissolving the injunction on the basis of recoupment. Defendant counters that the evidence supported the trial court's finding that plaintiffs had recouped their initial investment in RBH. Defendant also maintains that the injunction should have been dissolved on the basis of a change of control over AZL.

We believe that a resolution of the issue as to whether a change of control over AZL entitled defendant to terminate his employment contract with plaintiffs is dispositive of the appeal. The pertinent paragraphs of the contract provide as follows:

"Paragraph 10. The Employee agrees with AZL that, within the area hereinafter described, for a period of the lesser of (I) eight years from and after the Closing Date, or (II) three years following the termination of his employment with RBH, he will not without prior written consent of AZL engage directly or indirectly (either) financially or as a shareholder, employee, officer, partner, independent contractor or owner, or in any other capacity calling for the rendition of personal services or acts of management, operation or control in any business in which RBH is engaged on the close of business on the Closing Date (herein referred to as 'The RBH Business'). The agreement described in the preceding sentence shall pertain to the geographical area in which the RBH business is being conducted at the time of the termination of Employee's employment.
* * *

Paragraph 15. This Agreement may not be assigned by any party hereto. Notwithstanding the foregoing, Employee may terminate the Agreement if control of RBH or AZL, or substantially all or any

of their principal business, is acquired by a business which was not theretofore controlled by AZL."

The trial court construed the above provisions as operating to restrain defendant for a period of three years after his five-year term of employment but further found that the change of control over AZL had no effect on the restrictive covenant since defendant previously had terminated his employment.

■■ In construing a contract, the determinative factor is to effect the intentions of the parties. (*S&F Corp. v. American Express Co.* (1978), 60 Ill. App. 3d 824, 377 N.E.2d 73; *Adkisson v. Ozment* (1977), 55 Ill. App. 3d 108, 370 N.E.2d 594.) Where the terms of the contract are plain and unambiguous, the intent of the parties must be ascertained solely from the words employed therein. (*LaThrop v. Bell Federal Savings & Loan Association* (1977), 68 Ill. 2d 375, 370 N.E.2d 188; *Herbert Shaffer Associates, Inc. v. First Bank of Oak Park* (1975), 30 Ill. App. 3d 647, 332 N.E.2d 703.) We view the terms of the contract, including those of paragraph 15, as plain and unambiguous. The language of the contract clearly indicates that the parties entered into an eight-year agreement which encompassed defendant's five-year term of employment and his three-year covenant not to compete. Paragraph 15 of the contract expressly provided that the contract was subject to termination by defendant if control of AZL or RBH was acquired subsequently by a business which was not controlled by AZL at the time of the execution of the contract. No limitations appear in the contract on the applicability of paragraph 15. The contract does not indicate that paragraph 15 was applicable only for the first five years of the contract or that defendant could properly terminate the agreement only during his actual employment with plaintiffs. To construe paragraph 15 to mean that defendant could terminate the contract only while he was actually employed, in effect, would be rewriting the contract for the benefit of plaintiffs. This we cannot do. (See *People ex rel. Illinois State Scholarship Commission v. Harrison* (1978), 67 Ill. App. 3d 359, 384 N.E.2d 947; *Stull v. Hicks* (1978), 59 Ill. App. 3d 665, 375 N.E.2d 981.) In plain and unambiguous language, the contract gives defendant the unqualified right to terminate his agreement if a change of control over AZL occurred during the life of the agreement.

■■ The trial court correctly ruled that managerial control had passed to Procor as a result of the $10,000,000 debt financing agreement. Procor obtained the two senior executive positions in AZL, which then constituted one-half of the AZL executive committee. Three of Procor's directors became AZL directors, and Procor obtained an option to convert the debentures into 40% of the outstanding common stock in AZL.

Procor clearly occupied a position of direction and control over the management and corporate policy of AZL.

We shall comment briefly on plaintiff's assertion that a change of control over AZL was not a material breach of the contract and that therefore defendant should be compelled to comply with the contract and to seek damages for the breach. The simple answer to the argument is that the parties mutually agreed in their contract that under such conditions, defendant would be permitted to terminate the agreement. Moreover, it appears that a subsequent change of control was an important and substantial matter of interest to the parties throughout their negotiations and was material to the contract.

For the reasons stated, the judgment of the circuit court of Cook County dissolving the injunction is affirmed.

Judgment affirmed.

SIMON, P. J., and RIZZI, J., concur.