**NORTHWESTERN NATIONAL LIFE INSURANCE COMPANY, a Minnesota corporation, Plaintiff,**

v.

**Daniel COMM, individually, and Royal Oaks Apartments Associates, a limited partnership, Defendants.**

No. 84 C 10230.

United States District Court, N.D. Illinois, E.D.

Jan. 23, 1986.

---

Robert R. Tepper, Lester Rosen, Martha A. Warren, Rosenthal and Schanfield, Chicago, Ill., for plaintiff.

Norman Hanfling, Norman Hanfling & Assoc., Chicago, Ill., for defendants.

## ORDER

NORGLE, District Judge.

Plaintiff has filed a motion for partial judgment on the pleadings or, in the alternative, for partial summary judgment. The motion for judgment requires this court to interpret certain provisions of a partnership Agreement ("Agreement") between the parties appended to the motion and the complaint. Defendants have opposed the motion and have submitted exhibits and documents along with their opposition brief.

■ This is a single count action. Thus, the proposed "partial" summary judgment is not partial at all as it will dispose of the question of liability. Because we have considered matters outside of the pleadings, we treat this motion as one for summary judgment under Fed.R.Civ.P. 56(c).[1]

The alignment of the parties in this case is needlessly complex. Simply stated, plaintiff and defendants are partners in a limited partnership. The plaintiff is the limited partner (30% interest); the defendant is the general partner (70% interest). The partnership was formed exclusively to

---

1. Neither party has filed a statement of uncontested facts or a statement of genuine issues in compliance with Local Rules 12(e) & (f). This may be understandable given that plaintiff filed alternatively a motion for judgment on the pleadings and for summary judgment. We have treated this motion as one for summary judgment and conclude that because plaintiff framed its motion in the alternative and defendant attached documents to its response, adequate notice has been provided. *See generally Slevin v. Pedersen Assocs., Inc.,* 540 F.Supp. 437, 438 & n. 2 (S.D.N.Y.1982); 5 C. Wright & A. Miller, *Federal Practice and Procedure, Civil* § 1371 (1969).

construct, rent, manage, and operate a rental apartment complex ("premises"). (*See* Partnership Agreement, ¶ 2.02, Ex. A.) The only question presented to this court at this time is the meaning of key provisions of the partnership agreement relating to the distribution of proceeds arising from the sale of the premises.

At the outset we restate established principles regarding summary judgment. A motion for summary judgment should be granted when there are no genuine issues of material fact and judgment may be rendered as a matter of law. Fed.R.Civ.P. 56. The burden of demonstrating that there are no material facts in issue is on the moving party, but the opposing party may not avoid summary judgment by baldly asserting the existence of a disputed fact. *Atchison, Topeka & Santa Fe v. United Transp. Union*, 734 F.2d 317, 320 (7th Cir. 1984). We understand defendants to object only to Plaintiff's preferred interpretation of the Agreement and not to the existence of any material issue of fact.

Neither party has provided the court with any meaningful statement of Illinois law regarding the interpretation of limited partnership agreements. Because the parties have asked this court to interpret their Agreement we shall begin with a brief statement of the controlling law.

The Uniform Limited Partnership Act, (adopted in Illinois and codified at Ill.Rev. Stat. ch. 106½, § 44 *et seq.* (1985)), governs the rights and obligations arising out of limited partnerships. The act expressly incorporates provisions of the Uniform Partnership Act, Ill.Rev.Stat. ch. 106½, § 1 *et seq.* (1985), which, in turn, incorporates common law principles of agency and estoppel. *Id.* at § 4. A partnership is a contractual relationship, *Ramacciotti v. Simpkins*, 130 Ill.App.2d 733, 266 N.E.2d 700 (1970), to which the principles of contract law are applicable. *Allen v. Amber Manor Apartments Partnership*, 95 Ill. App.3d 541, 51 Ill.Dec. 26, 420 N.E.2d 440 (1981). While the parties need not produce articles of partnership to create a valid partnership, *Peck v. Peck*, 16 Ill.2d 268, 157

N.E.2d 249 (1959); *Urban v. Brady*, 86 Ill.App.2d 158, 230 N.E.2d 65 (1967); *Keller v. Keller*, 4 Ill.App.3d 89, 280 N.E.2d 281 (1972), the partners have the right to establish between themselves by agreement their rights, duties, and obligations as far as the partnership is concerned. *Saballus v. Timke*, 122 Ill.App.3d 109, 77 Ill.Dec. 451, 460 N.E.2d 755 (1983); *McKay's Estate v. Moses*, 35 Ill.App.3d 458, 343 N.E.2d 45 (1976). The parties' ability to create and enforce a private contractual relationship, of course, is limited by the competing concerns of public policy.

When parties, such as plaintiff and defendant, do reduce their partnership to an agreement, a presumption is raised that the writing expresses the mutual intentions of the parties. *Vallarta v. Lee Optical of Missouri*, 12 Ill.App.3d 112, 298 N.E.2d 212 (1973). Where that agreement is clear and unambiguous, the intent expressed in the agreement must be ascertained from the agreement alone. *AZL Resources Inc. v. Bromagen*, 79 Ill.App.3d 76, 34 Ill.Dec. 617, 398 N.E.2d 292 (1979); *Greenberg v. Goodman*, 52 Ill.App.3d 258, 9 Ill.Dec. 870, 367 N.E.2d 304 (1977). The primary objective of the court is to ascertain the intent of the parties and to give it effect. *Schek v. CTA*, 42 Ill.2d 362, 247 N.E.2d 886 (1969); *Ancraft Prod. Co. v. Universal Oil Prods.*, 100 Ill.App.3d 694, 695, 427 N.E.2d 585 (1981).

The interpretation of a contract is a question of law to be decided by the court. *Fitzsimmons v. Best*, 528 F.2d 692 (7th Cir.1976) (*per curiam*); *Mazanek v. Rockford Drop Forge*, 98 Ill.App.3d 956, 54 Ill.Dec. 368, 424 N.E.2d 1271 (1981). The provisions of the partnership agreement which the parties ask this court to interpret concern the distribution of net proceeds from the sale of the real estate that formed the basis of the partnership.

The Agreement provides for termination and dissolution of the partnership upon the sale of the premises or all of the beneficial interest of the premises. (Agreement ¶ 10.-01(b).) The relevant paragraphs of the Agreement are as follows:

10.02 *Effect of Termination.* Upon termination and dissolution, as provided for in 10.01 hereof the General Partner ... shall immediately proceed to wind up and terminate the Partnership and realize upon its assets ... Such General Partner ... shall cause to be made a proper accounting of all of the assets and liabilities of the Partnership and of the net profit or net loss of the Partnership from the date of the last previous accounting to the date of dissolution, all prepared and audited by a reputable firm of independent certified public accountants. The General Partner or Liquidating Trustee, as aforesaid, shall cause all of the Partnership's liability and obligations to creditors to be paid in the order of priority as provided by law *and, thereupon, notwithstanding the provisions of Chapter 106½, Section 66, Illinois Revised Statutes, or any other law to the contrary,* the assets of the Partnership of the proceeds of their sale (herein called "Remaining Assets") *shall be distributed among the Partners in accordance with their respective Partnership interest as set forth in Section 6.01 hereof.* (Emphasis added).

6.01 *Interests.* Notwithstanding any disproportion in the capital accounts of the General Partner and the Limited Partner at any time, and subject always, to the terms and provisions of Article VII and VIII hereof, the General Partner shall have a Seventy Percent (70%) interest in the Partnership and the Limited Partner shall have a Thirty Percent (30%) interest in the Partnership.

6.02 *Profits and Losses.* Subject to the terms and provisions of Article VII, all profits and losses from the Partnership shall be borne by the General Partner and the Limited Partner in the ratio of their respective interests as provided for in Section 6.01 hereof, provided, that nothing herein contained shall render the Limited Partner personally liable for any debts of the Partnership or any of the losses thereof beyond the amount of its capital contribution made and to be made as provided for in Section 3.02 hereof.

Plaintiff's argument in support of its interpretation of the Agreement is straightforward. Paragraph 10.2 governs the effect of a termination of the partnership, which was triggered by the sale of the premises (¶ 10.1). Paragraph 10.2 expressly reverses the ordinary rule regarding distribution of assets upon dissolution. Section 66 of the Illinois Revised Statutes, chapter 106½, generally requires payment of liabilities first to creditors other than partners, then to limited partners, and finally to general partners. This scheme is not followed in ¶ 10.2 of the Agreement. Paragraph 10.2 states that following payment of liabilities to outside creditors, "notwithstanding the provisions of Chapter 106½, Section 66, Illinois Revised Statutes, the assets of the Partnership or the proceeds of their sale ... shall be distributed among the Partners in accordance with their respective Partnership interests as set forth in Section 6.01 hereof." Thus, the effect of ¶ 10.02 is to partially replace the statutory method of distribution of assets among the partners with the method provided in ¶ 6.01.

Paragraph 6.01 expressly states that "Notwithstanding any disproportion in the capital accounts of the General Partner and the Limited Partner at any time, ... the General Partner shall have a Seventy Percent (70%) interest in the Partnership and the Limited Partner shall have a Thirty Percent (30%) interest in the Partnership." The effect of this provision is that the proceeds of the sale shall be distributed in accordance with the 70–30 ratio notwithstanding any capital investment (*see* ¶¶ 7.02 & 7.03). This provision clearly contemplates a potential disparity in the capital contribution of the limited and general partners and provides that such disparity will have no effect on the distribution of assets or proceeds. The Agreement further provides that the limited partner's capital contribution would not exceed the initial contribution. (*See* ¶ 3.02). Any disparity in capital contribution, absent an amendment in the Agreement, would necessarily have arisen from the defendant-gen-

eral partner's increased capital contribution. Thus, what was contemplated by the Agreement was in fact what occurred. Therefore, plaintiff's interpretation is that the proceeds from the sale of the premises were to be diminished by payment of costs and outside creditor liabilities. Then, the division of net proceeds was to take place in accordance with the interests of the parties. Only after that distribution occurred, were the capital contributions to be returned to the limited and general partners.

The effect of this scheme of distribution is that the plaintiff-limited partner will realize an extraordinary profit ($104,706.00) in comparison to its initial capital investment, while defendant-general partner, which will be forced to recoup its capital contribution through its 70% share, will end up losing approximately $75,000.00. Defendant contends that this gross disparity, combined with other factors, demonstrates conclusively that such an interpretation cannot have been the parties' intent in drafting these provisions.

Defendants' attack on plaintiff's interpretation is not always clear but it seems to take on several facets. As the court understands their argument, defendants contend

1) the history of the parties' relationship demonstrates that the accounting between the partners was always done one way and now, upon the sale of the premises, plaintiff is attempting to adopt a new procedure of calculating payments, (in effect, plaintiff is estopped from claiming a different interpretation of the Agreement);

2) ¶ 10.02 is ambiguous, vague, and confusing and therefore should be construed against the draftsman (plaintiff-limited partner);

3) the inequitable result that would arise if plaintiff's interpretation is adopted demonstrates a) that plaintiff's interpretation is wrong and the agreement does not reflect the real intention of

the parties (in effect a reformation argument), and b) that such a construction is unreasonable and absurd and should not be adopted by this court.

The court addresses each of these contentions in turn.

■ Defendants first argue that the relationship among the parties prevents the plaintiff from claiming any interpretation of the Agreement inconsistent with their previous understanding. The Glen Avenue Associates has been in existence since 1970. During the fourteen years of its existence, the partnership ran smoothly. The limited partner is alleged to have taken tax write-offs that existed based on an established method of accounting, one which is contrary to the current interpretation.

Although defendants never state as much, they apparently argue an estoppel theory. The court rejects this theory for several reasons. First the theory is unsubstantiated. Defendants do not provide *any* evidence which would demonstrate that such an understanding between the parties existed during the fourteen years. They merely rest on assertions made in their brief. Such assertions do not create issues of fact. Second, the defendants have not offered a contrary means of interpreting the agreement, they simply state that there was one. Without a plausible argument of an alternative means of distributing proceeds, the court has no way of knowing whether the agreement is ambiguous. Third, we find the agreement to be clear on its face. We think it clearly provides that distribution of proceeds is to occur prior to repayment of capital contributions. Finally, we do not think that the method of payment of proceeds on prior occasions would necessarily control the method of distribution upon dissolution of the partnership because the limited partnership has never been dissolved before.[2]  The court

---

**2.** Defendant also apparently argues that both plaintiff and defendant have been involved in other partnerships concerning real estate and

that in no case has the partnership agreement been interpreted as plaintiff suggests. While this argument has in one sense greater rele-

cannot conclude that the previous history (unsubstantiated as it is) of the parties supplies a sufficient basis to depart from the clear language of the Agreement.

▪ Next defendants argue that paragraph 10.02 is ambiguous and vague and therefore should be construed against the plaintiff-draftsman. *See, e.g., Semmes Motors, Inc. v. Ford Motor Co.,* 429 F.2d 1197 (2d Cir.1970); *see generally Restatement (Second) of Contracts* § 206 & comment a (1981). Defendants argue that if plaintiff wanted its interpretation to control, "all it had to do was have paragraph 10.2 state that notwithstanding any disproportion in capital accounts or monies advanced by the general partner or loans made by the general partner, in the event of a sale," Northwestern should receive 30% of the proceeds of sale before paying any capital contributions. (*See* Defendants' Brief at 9.) The express language of paragraph 10.2, through reference to ¶ 6.01 & 6.02, provides exactly that. (*See* ¶¶ 6.01 & 6.02). Therefore, we reject defendant's contention that the Agreement is ambiguous.

▪ Finally, defendants argue that the effect of Plaintiff's interpretation would produce harsh results to defendant demonstrating that such interpretation is unfair and/or unreasonable. *See Pennsylvania R. Co. v. Chicago R.I. & P.R. Co.,* 12 Ill.2d 574, 147 N.E.2d 363 (1958) (court should choose construction which is a natural one and not forced or contrived); *Wachta v. First Fed. Savings & Loan Ass'n of Waukegan,* 103 Ill.App.3d 174, 58 Ill.Dec. 676, 430 N.E.2d 708 (1981) (court should choose construction which is fair and reasonable and which does not lead to absurd results). These cases are unavailable to defendants for three reasons. First, the Agreement is clear and the court need not construe it further. Second, even if the Agreement were not clear, defendants have provided no alternative interpretation. The

court has no way of knowing whether the other interpretation is more reasonable or fair. Finally, we do not believe that plaintiff's interpretation is unreasonable or unfair. It is true that the defendant may suffer a loss, but we suppose that is a natural risk that the parties contemplated in signing the Agreement. Had the partnership been dissolved earlier, the distribution might have been different. The validity of the Agreement is not questioned. The two parties are sophisticated enough to have engaged in an enterprise that involved limited partnerships within limited partnerships to construct and manage a real estate complex. They reduced that agreement to writing and operated under the terms of the Agreement for fourteen years. This court will not interfere with the private contractual agreement that two parties reached at arm's length and within the boundaries of public policy.

### Conclusion

Thus, the plaintiff's motion for summary judgment on the interpretation of the Agreement is granted. The defendants have calculated the distribution of the net proceeds of the sale ($345,687.56) to be that plaintiff-Northwestern is to receive ($104,706.00) (30%) and defendant-ROAA is to receive ($240,981.00) (70%). The distribution of the proceeds from the sale of the premises, however, is not fixed and this calculation is uncertain.

The plaintiff is therefore given 14 days from the date of this order to present proposed findings of the net proceeds of the sale (with supporting data) and their distribution in accordance with this opinion, and defendants are given 14 days for response. A reply, if necessary, is due 7 days thereafter.

IT IS SO ORDERED.

vance to the current agreement (demonstrating a course of dealing between the parties on the issue of the distribution of proceeds upon *dissolution* of a partnership), it has even less significance on the current dispute. First, as with the claims regarding this partnership agreement, those claims are unsubstantiated by any evidence. Second, those transactions involved different agreements, different property, and different circumstances. Therefore, we do not consider those arguments persuasive in any event.