LIBERTY MUTUAL INSURANCE COMPANY, Plaintiff-Appellee, v. LORENZO MORGAN, Defendant-Appellant.

First District (3d Division) No. 82—2867

Opinion filed June 19, 1985.

Raymond P. Concannon, Ltd., of Chicago, for appellant.

Clausen, Miller, Gorman, Caffrey & Witous, P.C., of Chicago (James T. Ferrini, Frank L. Schneider, and Lisa D. Marco, of counsel), for appellee.

JUSTICE McGILLICUDDY delivered the opinion of the court:
Following a dispute over the amount of uninsured motorist coverage available under his automobile liability policy, the defendant,

Lorenzo Morgan (Morgan), filed a demand for arbitration with the American Arbitration Association. Subsequently, the plaintiff, Liberty Mutual Insurance Company (Liberty), filed an action in the circuit court of Cook County, seeking a stay of the arbitration proceedings and a declaratory judgment as to the amount of uninsured motorist coverage available under Morgan's policy. The trial court granted Liberty's motion for summary judgment. The defendant appeals.

The issues presented for review are: (1) whether Liberty's failure timely to inform Morgan that an amendment to the Illinois Insurance Code entitled him to increased uninsured motorist coverage was a violation of its fiduciary duty and of sections 143a and 143a—1 of the Illinois Insurance Code (Ill. Rev. Stat., 1979 Supp., ch. 73, pars. 755a, 755a—1);[1] (2) whether the trial court erred in granting Liberty's motion for summary judgment based on a finding that Morgan's uninsured motorist coverage was $50,000; (3) whether Morgan's policy was ambiguous, thus requiring resolution of the ambiguity in his favor; (4) whether the issuance of Endorsement 07 Corrected constituted an admission by Liberty that its Endorsement 07 provided Morgan with uninsured motorist coverage of $300,000; (5) whether the trial court erred in refusing to submit the coverage question to arbitration; (6) whether Liberty by its actions consented to uninsured motorist coverage of $300,000 for Morgan; and (7) whether the trial court improperly dismissed Morgan's counterclaim based on *res judicata*.

On March 10, 1979, Morgan purchased an automobile liability insurance policy from Liberty. He renewed the policy on March 10, 1980, retaining bodily injury liability coverage of $50,000 per occurrence and uninsured motorist coverage of $10,000 per person/$20,000 per accident. On July 9, 1980, an automobile driven by an uninsured motorist struck and injured Morgan as he jogged in Jackson Park in Chicago.

Sections 143a and 143a—1 of the Illinois Insurance Code provided that effective March 1, 1980, insurance companies were required to offer coverage for uninsured motorists in an amount at least equal to coverage for bodily injury liability in automobile liability policies. (Ill. Rev. Stat., 1979 Supp., ch. 73, pars. 755a, 755a—1.) Accordingly, Liberty sent a form letter to Morgan on November 14, 1980, offering increased uninsured motorist coverage up to the bodily injury limit of his policy. Enclosed with the letter was a form directing the policy-

[1]Section 143a was amended, section 143a—1 was repealed and section 143a—2 was added by Public Act 81—1426; sec. 1, effective September 3, 1980.

holder to indicate the amount of uninsured motorist coverage he desired. Four choices were offered: $15,000 per person/$20,000 per accident; $25,000/$50,000; $50,000/$100,000; and $100,000/$300,000. Printed directly below the list was the following: "NOTE: Your Uninsured Limit may not exceed your Bodily Injury Limit of Liability." The letter gave the option of making the increased coverage effective prospectively, or retroactive to any date on or after March 1, 1980.

Upon receipt of the form letter, on November 21, 1980, Morgan telephoned Liberty's sales office and spoke with Sally Ann Troppe. According to affidavits attached to his motion for summary judgment and his reply to Liberty's response thereto, Morgan instructed Troppe to increase his uninsured motorist limit to the maximum amount possible. The affidavits stated that Troppe agreed to increase Morgan's uninsured motorist limit to $300,000, effective March 1, 1980, and his bodily injury liability limit to $300,000, effective November 21, 1980. However, the record indicates that at 11:30 a.m. on November 21, 1980, Troppe completed and signed a form to amend Morgan's policy, writing only: "Increased Liability to $300,000." There was no reference to uninsured motorist coverage.

On January 6, 1981, Liberty issued Itemized Change Endorsement 07, which indicated that Morgan's uninsured motorist coverage was retroactively increased from March 1 to November 22, 1980; however, no amount was designated. Several days later, Itemized Change Endorsement 07 Corrected was issued, explaining that the retroactive uninsured motorist coverage increase was to $50,000/$100,000 from March 1, 1980, to November 22, 1980.

On March 3, 1981, Morgan filed a demand for arbitration with the American Arbitration Association, claiming that his uninsured motorist limits were $300,000 under the policy. On December 4, 1981, Liberty filed an action for declaratory judgment. On December 10, 1981, Liberty filed an amended complaint for declaratory judgment. The amended complaint sought an order staying the arbitration proceedings and declaring that uninsured motorist limits of $50,000/$100,000 applied to Morgan's accident.

On December 11, 1981, Morgan filed a motion to compel arbitration of the dispute over his uninsured motorist limits. The trial court denied the motion on December 17, 1981.

On January 21, 1982, Liberty filed a motion for summary judgment. Morgan filed a response thereto and a cross-motion for summary judgment on February 17, 1982.

On February 22, 1982, arbitrator Sheldon C. Garber issued the following finding:

"At the hearing, the parties were requested to submit a copy of the policy for the purpose of determining what the policy limits were. However, I am unable to determine what the policy limit is. Only the Court can determine Coverage therefore, I AWARD as follows: LIBERTY MUTUAL INSURANCE COMPANY shall pay to LORENZO MORGAN the sum of THREE HUNDRED THOUSAND DOLLARS ($300,000.00). If the Amount of the policy limits are [*sic*] less than the above sum, then I AWARD the policy limits."

On June 18, 1982, the trial court granted Liberty's motion for summary judgment and ruled that on July 9, 1980, the policy provided uninsured motorist coverage of $50,000. The trial court denied Morgan's motion for summary judgment.

On June 25, 1982, Morgan filed a motion to reconsider and vacate the order granting summary judgment to Liberty. He also filed a motion for leave to file a counterclaim, asserting that "a counterclaim would properly frame the issues and delineate the respective legal arguments raised by Morgan." The trial court granted such leave, and Morgan filed his counterclaim on June 29, 1982. On July 7, 1982, Liberty filed a motion to strike and dismiss the counterclaim. The trial court vacated its June 18, 1982, order of summary judgment in favor of Liberty. On November 5, 1982, the trial court granted Liberty's motion to strike and dismiss Morgan's counterclaim, denied Morgan's motion for summary judgment, entered a final order of summary judgment in favor of Liberty on the action for declaratory judgment, and entered judgment for $50,000 in favor of Morgan for uninsured motorist coverage. Morgan appeals.

■ Morgan contends that by not advising him until November 1980, that he was entitled to increased uninsured motorist coverage as of March 1, 1980, Liberty violated a duty to provide trust, confidence and fair and open dealing to its policyholders. Morgan relies principally on *Ledingham v. Blue Cross* (1975), 29 Ill. App. 3d 339, 347-48, 330 N.E.2d 540, where this court agreed with *Fletcher v. Western National Life Insurance Co.* (1970), 10 Cal. App. 3d 376, 89 Cal. Rptr. 78, that an insurer owes its insured an implied-in-law duty of good faith and fair dealing that it will do nothing to deprive the insured of the benefits of the policy. Additionally, Morgan argues that Liberty's failure timely to inform him of his right to increased uninsured motorist coverage violated sections 143a and 143a—1 of the Illinois Insurance Code (Ill. Rev. Stat, 1979 Supp., ch. 73, pars. 755a, 755a—1).

On November 14, 1980, Liberty informed Morgan of the change in the law and offered to increase his uninsured motorist coverage to his

bodily injury limit under the policy, prospectively or retroactively to any date on or after March 1, 1980. Thus, Morgan was given the opportunity to increase his uninsured motorist coverage retroactively to cover his July 9, 1980, accident with an uninsured motorist. Under these circumstances, Liberty's delay in informing Morgan of his rights worked to his advantage rather than to his detriment. Morgan was not deprived of the benefits of his policy. Moreover, any violation of sections 143a and 143a—1 was cured by Liberty's subsequent actions.

Morgan argues that the trial court erred in granting Liberty's motion for summary judgment based on a finding that his uninsured motorist limit was $50,000. Summary judgment shall be rendered if the pleadings, depositions and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1981, ch. 110, par. 2—1005; *Barnes v. Washington* (1973), 56 Ill. 2d 22, 305 N.E.2d 535.) As against positive, detailed averments of fact in an affidavit, allegations made on information and belief are insufficient, for they are not equivalent to averments of relevant facts but rather put in issue only the pleader's information or belief and not the truth or falsity of the "facts" referred to. (*Fooden v. Board of Governors* (1971), 48 Ill. 2d 580, 272 N.E.2d 497.) Conclusions, unsupported by facts admissible in evidence, do not create a genuine issue of material fact. (*Greenberg v. Goodman* (1977), 52 Ill. App. 3d 258, 367 N.E.2d 304.) While summary judgment is to be encouraged, it is a remedy to be awarded with caution in view of its drastic nature, and it should be granted only when the party's right to it is clear and free from doubt. *In re Estate of Tomaso* (1980), 82 Ill. App. 3d 286, 402 N.E.2d 702.

■ The record indicates that on November 14, 1980, Liberty offered Morgan increased uninsured motorist coverage up to the bodily injury limit of his policy, which was $50,000 per occurrence. The letter warned that Morgan could not select an uninsured motorist limit in excess of his bodily injury limit. On November 21, 1980, Morgan phoned Liberty with instructions to increase his uninsured motorist limit to the maximum amount possible. According to Itemized Change Endorsements 07 and 07 Corrected, Liberty retroactively increased Morgan's uninsured motorist limit to $50,000/$100,000, from March 1 to November 22, 1980. This was consistent with Liberty's letter prohibiting an increase in uninsured motorist coverage in excess of Morgan's $50,000 bodily injury limit. By affidavit, Morgan alleged that Liberty had agreed to retroactively increase his uninsured motorist coverage to $300,000. Although Morgan may have believed that the

retroactive increase was to $300,000, or that he was entitled to such an increase, the record contains no evidence that Liberty retroactively increased his uninsured motorist coverage to more than $50,000/$100,000. The trial court did not err in granting Liberty's motion for summary judgment, as its right thereto was clear and free from doubt.

■ Morgan asserts that his policy is ambiguous regarding the uninsured motorist limit applicable on the accident date, and the ambiguity should be resolved by raising the limit to $300,000. His list of "ambiguities" is drawn from the series of endorsements and schedules which supplement the original policy and reflect the changes therein from March 10, 1980, through January 6, 1981. One such change, an increase in uninsured motorist coverage from $25,000/$50,000 to $50,000/$100,000 was made after Liberty gave further consideration to its obligation under section 143a and determined that the larger amount would satisfy the requirement of offering at least as much uninsured motorist coverage as Morgan's $50,000 bodily injury liability coverage. The other modifications were made at Morgan's request. These changes cannot be construed as ambiguities in the policy. Nor can Endorsement 07 be characterized as an ambiguity because it was incomplete, especially since Endorsement 07 Corrected, issued several days later, supplied the necessary information. Our examination of the policy reveals no ambiguity. It is clear that the accident of July 9, 1980, was covered by uninsured motorist limits of $50,000/$100,000.

Morgan argues that by issuing Endorsement 07 Corrected, Liberty admitted that Endorsement 07 provided uninsured motorist coverage of $300,000. Endorsement 07 showed that as of January 6, 1981, Morgan's uninsured motorist coverage was $100,000/$300,000, and his bodily injury liability was $300,000. Morgan had prospectively increased his coverage to those amounts on November 22, 1980. Endorsement 07 also indicated that uninsured motorist coverage had been increased retroactively from March 1 to November 22, 1980. Endorsement 07 Corrected provided the same information, adding that the amount of the increased uninsured motorist coverage from March 1 to November 22, 1980, was $50,000/$100,000. The issuance of Endorsement 07 Corrected did not constitute any admission by Liberty regarding Endorsement 07, other than that Endorsement 07 was incomplete.

■ Morgan asserts that the trial court erred in refusing to submit the question of the amount of uninsured motorist coverage available under his policy to arbitration along with the issues of liability and

damages. In addition to ascertaining the existence of an agreement to arbitrate, a court should order arbitration only if the dispute is arbitrable. (*J&K Cement Construction, Inc. v. Montalbano Builders, Inc.* (1983), 119 Ill. App. 3d 663, 456 N.E.2d 889.) Parties are only bound to arbitrate those issues which by clear language they have agreed to arbitrate; arbitration agreements will not be extended by construction or implication. (*Flood v. Country Mutual Insurance Co.* (1968), 41 Ill. 2d 91, 242 N.E.2d 149.) The arbitration clause in Morgan's policy provided in pertinent part as follows:

> "If any person making claim hereunder and the company do not agree that such person is legally entitled to recover damages from the owner or operator of an uninsured automobile because of bodily injury to the insured, or do not agree as to the amount of payment which may be owing under this Part, then the matter or matters upon which such person and the company do not agree shall be settled in accordance with the rules of the American Arbitration Association."

Thus, the parties in the instant case agreed to submit to arbitration questions of liability and damages. Since there was no agreement to arbitrate questions of amounts available under the policy, such disputes were not arbitrable.

In *Flood,* an automobile insurance policy arbitration clause nearly identical to the one in question here was considered. There, the insured sought damages for the death of his son, which occurred as a result of an automobile collision with an uninsured motorist. The insurer, disputing coverage, petitioned for stay of arbitration proceedings pending the trial court's determination of the coverage issue. The trial court denied the petition, and the appellate court affirmed. (*Flood v. Country Mutual Insurance Co.* (1967), 89 Ill. App. 2d 358, 232 N.E.2d 32.) The supreme court reversed, holding that the policy's arbitration agreement was limited to the issues of the liability of the uninsured motorist to the insured and the amount thereof.

■ Morgan contends that the implementation of section 143a of the Illinois Insurance Code rendered *Flood* inapplicable. Morgan points to the following excerpt from the statute:

> "*** No such policy shall be renewed or delivered or issued for delivery in this State after July 1, 1978 unless it is provided therein that any dispute with respect to such coverage shall be submitted for arbitration to the American Arbitration Association ***." (Ill. Rev. Stat., 1979 Supp., ch. 73, par. 755a.)

An examination of section 143a in its entirety reveals that "such coverage" refers to the requirement that uninsured motorist coverage be

offered in an amount at least equal to coverage for bodily injury liability. This language was considered in *Country Mutual Insurance Co. v. Kosmos* (1983), 116 Ill. App. 3d 914, 916-17, 452 N.E.2d 547:

> "The language 'disputes with respect to such coverage' is ambiguous. It is not clear whether it refers to issues of the existence of coverage or merely disputes arising under the policy provision where coverage is established. Accordingly, it would be appropriate to look at the construction of the legislature when enacting the bill. (*People v. Boykin* (1982), 109 Ill. App. 3d 112, 440 N.E.2d 285, *aff'd* (1983), 94 Ill. 2d 138, 445 N.E.2d 1174.) But the legislative debates, as cited by the insurer (80th Illinois General Assembly, Third Reading of Senate Bill 1041, May 23, 1977, at 46-47), indicate that the statute was enacted solely to curb delays in arbitration and not to extend the scope of arbitration." 116 Ill. App. 3d 914, 916-17.

In the absence of any indication of legislative intent to override *Flood* or extend the scope of arbitration, Morgan's argument must fail. The trial court did not err in refusing to submit to arbitration the question of the amount of uninsured motorist coverage available.

Morgan argues that Liberty consented to $300,000 uninsured motorist coverage, waiving its own rule that his uninsured motorist coverage could not exceed his bodily injury limits, and that Liberty should have been estopped from denying that. We find that Liberty did not waive its rule. As we have discussed above, on November 21, 1980, Liberty consented only to a retroactive increase to $50,000/ $100,000 and a prospective increase to $300,000 in uninsured motorist coverage.

■ Finally, Morgan contends that the trial court improperly dismissed his counterclaim based on *res judicata* grounds. *Res judicata* is a judicially created doctrine resulting from the practical necessity that there be an end to litigation and that controversies once decided on their merits remain in repose. (*Hughey v. Industrial Com.* (1979), 76 Ill. 2d 577, 394 N.E.2d 1164.) The doctrine of *res judicata* provides that a former adjudication on the merits by a court of competent jurisdiction constitutes an absolute bar to a second adjudication where there is identity of parties, subject matter and cause of action. (*Village of Northbrook v. County of Cook* (1980), 88 Ill. App. 3d 745, 410 N.E.2d 925.) Causes of action are identical where the evidence necessary to sustain a second verdict would sustain the first, *i.e.*, where the causes of action are based upon a common core of operative facts. (*Redfern v. Sullivan* (1982), 111 Ill. App. 3d 372, 444 N.E.2d 205.) The effect of this doctrine is to make the judgment in the first action

conclusive as to all questions actually decided and to all questions which might have been litigated and determined in that action. *La Salle National Bank v. County Board of School Trustees* (1975), 61 Ill. 2d 524, 337 N.E.2d 19, *cert. denied* (1976), 425 U.S. 936, 48 L. Ed. 2d 177, 96 S. Ct. 1668.

In the instant case, the parties and subject matter in the counterclaim were identical to those in the original action. Moreover, the causes of action were identical, since both were based upon a common core of operative facts. Thus, the final order granting summary judgment in favor of Liberty constituted an absolute bar to Morgan's counterclaim based on *res judicata* grounds.

For the foregoing reasons, the order of the circuit court of Cook County is affirmed.

Affirmed.

WHITE, P.J., and McNAMARA, J., concur.