RICHARD MORTELL et al., d/b/a Rosenthal & Company, Plaintiffs-Appellants, v. INSURANCE COMPANY OF NORTH AMERICA, Defendant-Appellee.

First District (1st Division) No. 86—0720

Opinion filed January 11, 1988.

Arvey, Hodes, Costello & Berman, of Chicago (Ralph A. Mantynband, Steven R. Greenberger, and Thomas F. Sax, of counsel), for appellants.

Baker & McKenzie, of Chicago (Francis D. Morrissey, John W. Dondanville, and Thomas A. Doyle, of counsel), for appellee.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

This interlocutory appeal arises out of this court's decision in *Mortell v. Insurance Company of North America* (1983), 120 Ill. App. 3d 1016, 458 N.E.2d 922 (*Mortell* I) to vacate summary judgment and to remand for a trial on the issue of plaintiffs' compliance with the notice provisions on certain fidelity bonds issued by defendant, Insurance Company of North America. In the initial complaint, plaintiffs Richard Mortell, Alan Freeman, Leslie Rosenthal and Robert Myron, together doing business as Rosenthal & Co. (Rosenthal), sought a declaration of their rights with respect to claims made during 1976

through 1978 under two fidelity bonds issued by defendant in 1975 and amended in 1977. The bonds provided indemnity to Rosenthal for losses suffered as a result of the dishonesty of its employees, and also as a result of forgery, theft and other such acts. The trial court entered summary judgment in favor of defendant and Rosenthal appealed. In reaching its decision in *Mortell* I, this court divided the claims into those discovered prior to the 1977 amendment and those discovered subsequent to the amendment, and vacated summary judgment as to the former and remanded that issue for a trial, and affirmed summary judgment as to the post-amendment claims. Upon remand, Rosenthal was granted leave to add count III, which alleged that defendant had violated the Consumer Fraud and Deceptive Business Practices Act[1] (Ill. Rev. Stat. 1985, ch. 121½, par. 261 *et seq.*) by requiring Rosenthal to execute the 1977 amendment which, Rosenthal claimed, narrowed the scope of coverage provided by the original bond. The trial court dismissed count III and Rosenthal appeals. The sole issue before this court is whether the trial court erred in dismissing count III of Rosenthal's complaint. For the following reasons, we affirm the trial court's order.

Preliminarily, a brief summary of the underlying facts and issues addressed in *Mortell* I is necessary to provide the framework for our decision. In October 1976, the Commodities Futures Trading Commission (CFTC) filed a complaint in Federal district court against Rosenthal alleging that Rosenthal had engaged in cheating, defrauding and deceiving purchasers of certain commodity options, and seeking injunctive relief. Approximately six months later, the CFTC also filed an administrative complaint which contained the same allegations. Following a hearing, the administrative law judge found that the evidence had failed to establish that the defendants had violated either the Commodities Exchange Act or CFTC regulations. Subsequently, the Federal district court dismissed the CFTC complaint without prejudice "for want of equity." In addition, during the period between 1976 and 1978, numerous customers filed complaints against Rosenthal's salesmen, alleging dishonesty and deceptive sales practices and seeking rescission of their transactions pursuant to provisions of the Commodity Exchange Act (7 U.S.C. §1 *et seq.* (1982)).

Meanwhile, on January 8, 1977, at defendant's request, Rosenthal

---

[1]Rosenthal mistakenly refers to the Act as the "Consumer Fraud and Deceptive Trade Practices Act." Notwithstanding direct quotes from the pleadings, the Act is referred to in this opinion by its proper title, "Consumer Fraud and Deceptive Business Practices Act."

signed an amendment to the dishonesty clause of the fidelity bonds.[2] Over the next few months, meetings were held between defendant and Rosenthal to discuss the CFTC litigation and the numerous customer complaints. As the insurer, defendant had unlimited access to Rosenthal's files, and after thoroughly examining the files, defendant exercised its right to cancel the bonds, effective July 8, 1978. Rosenthal then filed its complaint seeking a declaration that the $2 million in losses it had incurred between 1976 and 1978 as the result of customer claims and attorney fees were covered by the bonds.

The trial court entered summary judgment in favor of defendant. On appeal, plaintiff presented the following issues for review:

"(1) Whether summary judgment was proper with respect to claims discovered by the insured prior to the January 8, 1977, amendment to coverage in light of the alleged factual issue of timely notice to the insured of these losses; (2) Whether the January 8, 1977, amendment to coverage was valid and enforceable with respect to claims the insured delivered after this date; [and] (3) Whether the policy clause which excludes coverage for losses resulting from acts of the insured's partners releases the insurer of any obligation to indemnify the insured for attorney fees spent in defending the CFTC action." (*Mortell*, 120 Ill. App. 3d at 1018.)

After dividing the claims into preamendment and post-amendment, the *Mortell* I court found that a genuine issue of material fact existed regarding the preamendment claims as to whether Rosenthal had timely notified defendant of the claims. With respect to the post-amendment claims, the court found that the 1977 amendment controlled and defendant was not liable for coverage. Accordingly, the *Mortell* I court vacated the summary judgment as to the preamendment claims and remanded the cause for a trial on the issue of

---

[2]Prior to the 1977 amendment, the dishonesty clause provided that covered losses included:

"Loss through any dishonest or fraudulent act of any of the Employees, committed anywhere and whether committed directly or by collusion with others, including loss of Property through any such acts of any of the Employees."

The amendment to the dishonesty clause provided:

"Dishonest or fraudulent acts as used in this Insuring Agreement shall mean only dishonest or fraudulent acts committed by such Employee with the manifest intent: (a) to cause the Insured to sustain such loss; and (b) to obtain financial benefit for the Employee, or for any other person or organization intended by the Employee to receive such benefit, other than salaries, commissions, fees, bonuses, promotions, awards, profit sharing, pensions or other employee benefits earned in the normal course of employment."

whether Rosenthal had given proper notice to defendant regarding those claims, and affirmed the summary judgment as to the post-amendment claims. Rosenthal's subsequent petition for rehearing and leave to appeal to the Illinois Supreme Court were denied.

Upon remand for a trial on the preamendment claims, Rosenthal filed a post-judgment amended complaint which added count III, as follows:

"1-4. Plaintiffs reallege paragraphs 1 through 4 of Count I as and for paragraphs 1-4 of Count III.

5. On or about January 8, 1977, defendant required plaintiffs to execute an amendment to the Brokers Blanket Bonds, a copy of which is attached hereto as exhibit 'B.' Defendant continued to represent that it would insure plaintiffs from losses caused by the dishonesty of plaintiffs' employees. Defendant did not reduce plaintiffs' premium at the time that it required plaintiffs to execute the amendment, nor did defendant inform plaintiffs that the risks which defendant was insuring were in any way altered by the amendment to the policy.

6. Section 2 of the Illinois Uniform Deceptive Trade Practices Act, [citation] defines a person who engages in a deceptive trade practice as one who, in the court of his business:

(5) represents that goods or services have *** characteristics, ingredients, uses, benefits or quantities that they do not have ***;

(12) engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

7. INA violated the Consumer Fraud and Deceptive Trade [sic] Practices Act, [citation], and in particular section 2 thereof, [citation], which prohibits:

*** unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act, ***'

8. Defendant misrepresented to plaintiffs that its insurance policy protected plaintiffs from employee dishonesty, when, in fact, by virtue of the January 8, 1977 policy amendment, plaintiffs had insurance for only certain, limited types of employee infidelity. Furthermore, defendant failed to inform plaintiffs

that the January 8, 1977 amendment to the policy limited the scope of employee dishonesty for which defendants' policy would provide coverage to plaintiffs.

9. Plaintiffs have been damaged in the sum of at least $1,017,397 by defendant's violation of the Consumer Fraud & Deceptive Trade Practices Act, in that plaintiffs incurred losses from employee dishonesty for which defendant's policy provided no coverage.

WHEREFORE, plaintiffs pray

A. For a judgment in the amount found due it by reason of defendant's violation of the Consumer Fraud & Deceptive Trade Practices Act;

B. For plaintiffs' cost of suit, including attorneys' fees; and

C. For such other, further and different relief as the Court may deem just."

Defendant moved to dismiss count III on the grounds that: (1) it failed to allege facts to support the allegations that defendant had used unfair or deceptive selling and advertising techniques; (2) pursuant to the Consumer Fraud and Deceptive Business Practices Act, no fraud, deception or misrepresentation exists where the terms of an insurance policy are unambiguous; and (3) the same type of argument had been previously raised in *Mortell* I, in which the appellate court had given effect to the 1977 amendment. The trial court granted defendant's motion to dismiss count III and plaintiff's interlocutory appeal followed.

On appeal, Rosenthal argues that the trial court erred in dismissing count III on the grounds that the allegations of the complaint were sufficient to state a claim under the Uniform Deceptive Trade Practices Act (Ill. Rev. Stat. 1985, ch. 121½, par. 311 *et seq.*) and the Consumer Fraud and Deceptive Business Practices Act. Despite Rosenthal's well-reasoned argument on this issue, we find that it is irrelevant in light of our determination that count III is barred by the doctrine of *res judicata* and was properly dismissed by the trial court.

The doctrine of *res judicata* provides that a former adjudication of an issue on the merits by a court of competent jurisdiction constitutes an absolute bar to a second adjudication where there is identity of parties, subject matter and a cause of action. Moreover, the judgment in the first action is conclusive not only of all questions actually decided, but also of all questions which might have been litigated and determined in the first action. *Liberty Mutual Insurance Co. v. Morgan* (1985), 138 Ill. App. 3d 938, 487 N.E.2d 1.

In the present case, defendant argues that because the fidelity

bonds at issue, the 1977 amendment to the bonds, and any attendant facts justifying enforcement of the amendment raised in count III were in existence at the time the initial complaint was filed, the theory raised in count III could have been raised and litigated at the first hearing. Thus, defendant argues, it was properly dismissed on the grounds that it was barred by the doctrine of *res judicata*. In response, Rosenthal contends that: (1) defendant has waived its *res judicata* argument by failing to raise the argument in the trial court; (2) the doctrine of *res judicata* does not apply because, unlike in the cases relied upon by defendant, count III is a continuation of the original proceeding, not a separate lawsuit; and (3) prior to this court's ruling in *Mortell* I, Rosenthal had no basis for alleging that defendant's representations of continued coverage were fraudulent.

■ First, regarding Rosenthal's contention that defendant waived its *res judicata* argument by failing to raise the issue in the trial court, our review of the record indicates a contrary conclusion. Paragraph 13 of defendant's motion to dismiss count III specifically alleges that "plaintiffs earlier raised exactly the same type of argument," and cites to *Mortell* I. Moreover, we find that in raising its waiver argument, Rosenthal has misplaced its reliance on a body of cases that addresses affirmative matters raised for the first time on appeal, rather than on cases that address defenses. (*Harris Trust & Savings Bank v. Duggan* (1983), 95 Ill. 2d 516, 449 N.E.2d 69; *Snow v. Dixon* (1977), 66 Ill. 2d 443, 362 N.E.2d 1052; *People ex rel. Wilcox v. Equity Funding Life Insurance Co.* (1975), 61 Ill. 2d 303, 335 N.E.2d 448; *Nemeth v. Banhalmi* (1984), 125 Ill. App. 3d 938, 466 N.E.2d 977.) In the present case, *res judicata* is raised as a defense. Further, it is well established that an appellee may urge any point in support of judgment on appeal even though not directly ruled on by the trial court as long as the factual basis for such point was before the trial court. (*Shaw v. Lorenz* (1969), 42 Ill. 2d 246, 246 N.E.2d 285.) In our view, paragraph 13 provides the necessary factual basis.

Second, in support of its contention that *res judicata* does not apply because count III is a continuation of the original proceeding and not a separate lawsuit, Rosenthal relies on *Hassett Storage Warehouse, Inc. v. Board of Election Commissioners* (1979), 69 Ill. App. 3d 972, 387 N.E.2d 785. In *Hassett*, plaintiffs filed a complaint seeking a temporary restraining order and permanent injunction to prevent the board of election commissioners from taking an action to remove voting machines and other voting material from plaintiff's warehouse and giving a contract for storage and cartage of the material to defendant warehouse. In its original complaint, plaintiff alleged that

to award the contract to defendant warehouse would violate statutory competitive bidding requirements and would cause plaintiff to suffer irreparable injury. Defendant warehouse attacked the merits of plaintiff's cause of action and the court's equitable jurisdiction. Plaintiff then moved for a temporary restraining order. Following the hearing on plaintiff's motion, the court dismissed the complaint and granted plaintiff leave to file an amended complaint. The court did not rule on the temporary restraining order. The next day the contract was awarded to defendant warehouse and the materials were removed from plaintiff's warehouse.

Approximately one month later, plaintiff filed an amended complaint seeking declaratory judgment and other relief. The complaint alleged the same statutory violations and sought an order compelling the board to have the contract rebid or to award the contract to plaintiff. Both the board and defendant warehouse moved to dismiss. The motion was granted on a ground other than *res judicata*. In holding that the doctrine of *res judicata* did not act to bar the amended complaint, the court found that the original order dismissing the complaint had not terminated the action because plaintiff had been granted leave to amend. Thus, the amended complaint was a continuation of the original proceeding. 69 Ill. App. 3d at 979.

■ Although we agree with Rosenthal that the cases relied upon by defendant are distinguishable from the present case on the ground that they address the situation where a second independent lawsuit has been filed which is based upon the same set of operative facts as the prior, finalized lawsuit (*Hughey v. Industrial Comm'n* (1979), 76 Ill. 2d 577, 394 N.E.2d 1164; *Liberty Mutual Insurance Co. v. Morgan* (1985), 138 Ill. App. 3d 938, 487 N.E.2d 1; *Neuberg v. Michael Reese Hospital & Medical Center* (1983), 118 Ill. App. 3d 93, 454 N.E.2d 684; *Morris v. Union Oil Co.* (1981), 96 Ill. App. 3d 148, 421 N.E.2d 278; *Baird & Warner, Inc. v. Addison Industrial Park, Inc.* (1979), 70 Ill. App. 3d 59, 387 N.E.2d 831; *Pratt v. Baker* (1967), 79 Ill. App. 2d 479, 223 N.E.2d 865), we do not agree with Rosenthal that *Hassett* controls. Instead, we find that the facts before us present a hybrid situation which neither line of cases directly controls. Specifically, although count III had not been filed as an independent lawsuit, a final judgment had been entered as to the issue count III attempted to amend, *i.e.*, insurance coverage for the post-amendment claims. As discussed, the *Mortell* I court had affirmed summary judgment, as to the post-amendment claims. Thus, as to coverage under the fidelity bonds for the post-amendment claims, the legal process had concluded. Therefore, similar to *Hassett*, the entire cause of

action had not been finalized. However, unlike *Hassett*, a final judgment had been entered as to the issue which Rosenthal attempted to amend. As a result, although count III does not technically constitute a second lawsuit, it does constitute an attempt to resurrect the finalized issue regarding post-amendment claims by raising an issue that could have been raised in the original proceeding and that involves the same parties and the same subject matter.

Finally, we are equally unpersuaded by Rosenthal's contention that, prior to the court's ruling in *Mortell* I, it had no basis for alleging that defendant's representations of continued coverage were fraudulent. In our view, as soon as defendant denied coverage under the bonds, Rosenthal had grounds for alleging that defendant had misrepresented its coverage. Accordingly, we conclude that count III is barred by the doctrine of *res judicata* and was properly dismissed by the trial court.

For the aforementioned reasons, the order of the circuit court of Cook County is affirmed.

Affirmed.

BUCKLEY and O'CONNOR, JJ., concur.