**Rebecca BALIAN**

v.

**ALLSTATE INSURANCE COMPANY.**

**No. 90–615–APPEAL.**

Supreme Court of Rhode Island.

June 1, 1992.

James Donelan, Warwick, for plaintiff.

Carol Zangari, Anderson, Anderson & Zangari, Providence, for defendant.

## OPINION

KELLEHER, Justice.

This controversy is before us as a result of an appeal by the defendant, Allstate Insurance Company (Allstate), from a portion of a declaratory judgment in which the plaintiff, Rebecca Balian (Balian), was awarded underinsured-motorist benefits from Allstate. Additionally Balian appeals the denial of her motion to dismiss Allstate's declaratory-judgment action and that portion of the declaratory judgment decided in Allstate's favor. We sustain Allstate's appeal in part and sustain the denial of Balian's motion to dismiss.

On December 11, 1987, Balian's vehicle was struck by another vehicle owned and operated by William Aptt (Aptt). Balian sustained injuries requiring medical assistance. At the time of the collision Aptt was insured by an insurance policy that contained a liability limit of $100,000, and Balian was covered by an Allstate insurance policy that contained an uninsured-motorist-liability limit of $100,000 per person and a medical-payment-benefits limit of $5,000 per person. After Balian submitted a claim to Allstate contending that Aptt was an underinsured motorist as defined by G.L.1956 (1979 Reenactment) § 27–7–2.1(B), as amended by P.L.1987, ch. 435, § 1 and making a demand for benefits pursuant to the provisions of her policy, a dispute arose between Balian and Allstate regarding Balian's right to receive damages as well as the amount of such damages. In accordance with Allstate's policy the dispute was submitted to a three-member arbitration panel (panel).

On April 21, 1990, the panel rendered a decision in favor of Balian and awarded her "$85,000 plus interest and costs of suit." Allstate moved to stay the arbitration award and counter-petitioned for a declaratory judgment, contending that Balian was not entitled to recover any underinsured-motorist benefits as neither Balian's applicable policy limits nor her damages were in excess of Aptt's liability limits. The parties subsequently filed cross-motions to resolve the legal issues regarding whether Balian's damages or limits exceeded Aptt's liability limits.

While resolution of the cross-motions was pending, the trial justice remanded the case to the panel for clarification of its award regarding interest. On October 16,

1990, the panel stated that it intended "the award to be comprised of $85,000.00 plus 12% interest per annum from the date of the incident until April 21, 1990, the date of the award." Following the panel's clarification, the trial justice ruled that Balian's damages did not exceed tortfeasor Aptt's $100,000–liability limits because interest and costs awarded by the panel were not elements of damages for purposes of the uninsured/underinsured-motorist statute. Consequently the trial justice decided that Balian was entitled to receive more money under her own coverage than under Aptt's coverage by combining her uninsured/underinsured-motorist coverage of $100,000 with the medical-payments coverage of $5,000 for a total of $105,000. Additionally the trial justice found that tortfeasor Aptt was underinsured to the extent of $5,000 and that Balian was therefore entitled to uninsured/underinsured-motorist coverage because Aptt's coverage was less than her own. Furthermore the trial justice denied Balian's motion to dismiss Allstate's declaratory-judgment petition.

We find it helpful to separate this discussion into three issues. We shall ask first whether the trial justice erred in failing to dismiss Balian's motion for declaratory judgment after the panel rendered its decision and award for Balian; second, whether Balian may be entitled to uninsured/underinsured-motorist coverage pursuant to § 27–7–2.1(B); and third, whether medical-payment limits may be added to uninsured/underinsured-motorist limits to trigger underinsured-motorist coverage also pursuant to § 27–7–2.1(B).

■ In the first matter to be resolved on appeal, Balian contends that the trial justice erred in denying her motion to dismiss Allstate's declaratory-judgment petition because both she and Allstate are bound by the panel's decision since arbitration is the exclusive method for resolving any dispute regarding the insured person's right to receive damages pursuant to his or her Allstate policy. Countering, Allstate argues that the issues submitted to the panel, that is, tort liability and the amount of compensatory damages, are separate from the is-

sues raised in its declaratory-judgment action. The distinction in the approach of the respective parties is critical. This is not a case, as Balian argues, of relitigating issues previously addressed in arbitration, which cannot be examined by a court in a declaratory-judgment action. *City of Pawtucket v. Pawtucket Lodge No. 4, Fraternal Order of Police,* 545 A.2d 499, 502–03 (R.I.1988). However, Allstate does not contest the validity of Balian's award but instead asks whether, given the award rendered by the panel, Balian may now be entitled to receive uninsured-motorist-coverage benefits from Allstate.

Since a party is bound to arbitrate only those issues that he or she has consented to arbitrate, we are compelled to examine the applicable policy language. Part 5 of Allstate's insurance policy, entitled "Uninsured Motorists Insurance Coverage SS," provides that Allstate "will pay damages for bodily injury or property damage which an insured person is legally entitled to recover from the owner or operator of an uninsured auto." Part 5 of the policy also states that *"[t]he right to benefits and the amount payable* will be decided by agreement between the insured person and Allstate. If an agreement can't be reached, the decision will be made by arbitration." It also provides that "[i]f the insured person or we [Allstate] don't agree on that person's *right to receive any damages* or *the amount* * * * the disagreement will be settled by arbitration." (Emphases added.)

Previously we have construed arbitration clauses in insurance policies to include only the issues of liability and damages. *Bush v. Nationwide Mutual Insurance Co.,* 448 A.2d 782, 785 (R.I.1982). *See also State Farm Fire & Casualty Co. v. Rossini,* 14 Ariz.App. 235, 482 P.2d 484, *vacated on other grounds,* 107 Ariz. 561, 490 P.2d 567 (1971); *International Service Insurance Co. v. Ross,* 169 Colo. 451, 457 P.2d 917 (1969); *State Farm Fire & Casualty Co. v. Glass,* 421 So.2d 759 (Fla.Dist.Ct.App.1982); *Liberty Mutual Insurance Co. v. Morgan,* 138 Ill.App.3d 938, 93 Ill.Dec. 557, 487 N.E.2d 1 (1985); *Flood v. Country Mutual Insurance Co.,* 41 Ill.2d 91, 242 N.E.2d 149 (1968); *Liddy v. Companion Insurance*

*Co.*, 181 Ind.App. 16, 390 N.E.2d 1022 (Ind. App.1979); *Rosenbaum v. American Surety Co. of New York*, 11 N.Y.2d 310, 183 N.E.2d 667, 229 N.Y.S.2d 375 (1962); *compare, e.g., Lane v. Aetna Casualty & Surety Co.*, 203 Conn. 258, 524 A.2d 616 (1987); *Oliva v. Aetna Casualty and Surety Co.*, 181 Conn. 37, 434 A.2d 304 (1980); *State Farm Fire and Casualty Co. v. Yapejian*, 217 Ill.App.3d 516, 161 Ill.Dec. 196, 578 N.E.2d 323 (1991); *Michigan Mutual Liability Co. v. Graham*, 44 Mich. App. 406, 205 N.W.2d 289 (1973); *Keystone Insurance Co. v. Bowman*, 138 N.J.Super. 544, 351 A.2d 767 (1976); *see generally* Annot., 29 A.L.R.3d 328 (1970).

In *Bush* this court held that because the arbitration agreement was limited to the issues of fault and damages, "[a]ll other issues are for determination by the court." 448 A.2d at 785. The court concluded that "the arbitrator was without jurisdiction to decide the question of coverage." *Id.* Although the language of the insurance policy in the present controversy differs slightly from that in *Bush*,[1] the language of the present policy clearly denotes a party's "right to receive damages," a description that we believe is a liability issue and one properly submitted to the panel. Absent a specific submission of a coverage issue to arbitration, the question of coverage is one reserved exclusively for a court. In this instance the panel had neither the opportunity nor the authority to decide specifically whether Balian was legally entitled to recover damages under Allstate's uninsured-motorist-coverage provision of her policy. As there was no determination of the underinsured-motorist-coverage issue specifically submitted to arbitration, the trial justice was correct in his decision to grant Allstate's declaratory-judgment petition.

Having decided that the panel was properly empowered to render its decision on the issues of liability and damages, our second inquiry on appeal is whether Balian's damages award of $85,000 plus prejudgment interest is in excess of the tortfeasor Aptt's coverage so as to trigger Balian's recovery under the uninsured/underinsured-motorist statute § 27–7–2.1(B).[2]

This court has had occasion to discuss the nature of prejudgment interest following G.L.1956 (1985 Reenactment) § 9–21–10, as amended by P.L.1989, ch. 555, § 2. Prejudgment interest has been appropriately awarded as damages in situations in which interest is characterized as "an integral part of damages" and not "an item of expense or cost." *Lombardi v. Merchants Mutual Insurance Co.*, 429 A.2d 1290, 1293 (R.I.1981)(prejudgment interest representing an item of damages properly included in jury award); *see also Rucco v. Rhode Island Public Transit Authority*, 525 A.2d 43, 45 (R.I.1987); *Lepore v. Rhode Island Public Transit Authority*, 524 A.2d 574, 575 (R.I.1987)(immunity does not apply so as to bar attachment of prejudgment interest where RIPTA performs proprietary function). Cases brought under the State Tort Claims Act, however, limit the definition of damages so as not to include prejudgment interest because such interest is purely statutory and is peremptorily added to a jury verdict by the clerk of court. *Andrade v. State*, 448 A.2d 1293, 1295 (R.I.1982); *see also DiMeo v. Philbin*, 502 A.2d 825, 826–27 (R.I.1986)(imposition of prejudgment interest not part of judicial function and advising jury of fact of interest, amount, and/or calculation of interest reversible error). Indeed, this court has earlier noted that statutory interest is not

1. The questioned policy language in *Bush v. Nationwide Mutual Insurance Co.*, 448 A.2d 782, 783 (R.I.1982), provided in pertinent part that "[i]n any uninsured motorists claim, we will jointly determine with the insured or his legal representative whether there is legal right to recover damages, and if so in what amount. If agreement cannot be reached with regard to liability or amount of damages, the matter will be decided by arbitration." (Emphasis omitted.)

2. Under G.L.1956 (1979 Reenactment) § 27–7–2.1(B), as amended by P.L.1987, ch. 435, § 1 an "'uninsured motorist' shall include an underinsured motorist. An underinsured motorist is the owner or operator of a motor vehicle who carries automobile liability insurance with coverage in an amount less than the amount of damages that persons insured pursuant to this section are legally entitled to recover."

part of the substantive right of action but is "exclusively an incident attached thereto by legislative fiat after such right has been adjudicated." *Foster v. Quigley*, 94 R.I. 217, 218, 179 A.2d 494, 495 (1962). Thus the definition of damages may not always include interest.

■ This court believes that Allstate should be liable for the full value of the judgment rendered by the panel, including pre- and postjudgment interest. Indeed, arbitrators should add prejudgment interest to their awards unless the parties to the proceeding specifically provide otherwise by agreement. *Paola v. Commercial Union Assurance Companies*, 461 A.2d 935, 937 (R.I.1983). Moreover, a reviewing court must confirm an arbitrator's award [3] unless it is vacated for reasons of fraud, corruption, undue influence, or abuse of an arbitrator's authority [4] or modified or corrected.[5] Additionally an arbitrator has the authority to award prejudgment interest that, when calculated, will exceed the underinsured-motorist-liability limit of an insurance policy. *Sentry Insurance Co. v. Grenga*, 556 A.2d 998 (R.I.1989). His or her decision in this area is accorded proper deference. *Mangiacapra v. Sentry Insurance Co.*, 517 A.2d 1041, 1042 (R.I.1986). Consequently we are of the opinion that Balian is entitled to the full value of the award, plus interest and costs. We affirm the trial justice's confirmation of the panel's award.

■ That Allstate should be liable for the full value of the panel's award, however, does not mean that prejudgment interest is included within the definition of damages for purposes of this controversy. Indeed, the critical question, and one of first impression for Rhode Island, is, given the award, what utility the prejudgment interest may have in Balian's entitlement under § 27–7–2.1(B) to proceed pursuant to the underinsured-motorist coverage of her Allstate policy. We believe that prejudgment interest is not an element of damages

so as to trigger recovery under the underinsured-motorist statute.

Pursuant to Allstate's policy, the dispute between the parties was brought to a panel that rendered an award in favor of Balian for "$85,000.00 plus interest and costs of suit," which the trial justice confirmed. The panel determined the sum plus interest to be the damages, or value of compensation, for which Balian is entitled. However, the amount of compensation does not describe an issue of liability, which is a coverage issue and not one properly before the panel for determination. Given the fact that $85,000 is less than $100,000, Balian's damages are not in excess of the tortfeasor Aptt's coverage. Consequently the panel's inclusion of interest is excluded from our definition of damages for the purposes of activating the uninsured/underinsured motorist statute. Thus Balian is entitled to the full value of her award plus prejudgment interest; however, prejudgment interest will not be considered tacked onto an award for purposes of triggering underinsured-motorist recovery pursuant to § 27–7–2.1(B). Accordingly the trial justice properly ruled that interest and costs were not elements of damages for purposes of the statute.

■ In the third matter before us on appeal, we are asked whether medical-payment limits of an insurance policy may be added to uninsured/underinsured-motorist limits in order to trigger underinsured-motorist coverage pursuant to § 27–7–2.1(B).

Balian maintains that since she is legally entitled to recover up to $100,000 under the uninsured/underinsured-coverage provision of her policy with Allstate and she is additionally entitled to recover up to $5,000 of her medical expenses, the amount of benefits, when combined or "stacked," totals $105,000. Consequently Aptt's coverage limit of $100,000 is less than the new calculation of $105,000. Balian argues that she is entitled to proceed, pursuant to statutory definition, to the underinsured coverage of her insurance policy with Allstate as the

---

**3.** General Laws 1956 (1985 Reenactment) § 10–3–11, as amended by P.L.1989, ch. 145, § 1.

**4.** Section 10–3–12.

**5.** Section 10–3–14.

trial justice characterized Aptt as an underinsured motorist under § 27–7–2.1(B).

The "stacking" statute in Rhode Island is § 27–7–2.1(C),[6] the exercise of which has not been tested until now. Prior to the enactment of subsection (C) of § 27–7–2.1 in 1987,[7] however, Rhode Island permitted what is effectively intrapolicy stacking of insurance-coverage limits. *American Universal Insurance Co. v. Russell*, 490 A.2d 60 (R.I.1985); *Taft v. Cerwonka*, 433 A.2d 215 (R.I.1981).

In *Taft* we held that the plaintiffs were entitled to recover amounts up to the aggregate sum of the vehicles' insurance under the uninsured-motorist provisions of the policy in a situation in which the plaintiffs had paid two separate premiums providing each vehicle with uninsured-motorist coverage. 433 A.2d at 219. A later case, also decided before subsection (C) of § 27–7–2.1 was enacted, noted that the *Taft* policy was "silent as to whether 'stacking' of coverages was permissible" and declared that the *Taft* plaintiffs were entitled to recover "the aggregate sums of the uninsured motorist coverage because it was reasonable for them to expect as much." *Russell*, 490 A.2d at 63.

Thus the prevalent reasoning allowing intrapolicy stacking in this state rests upon an interpretation of the reasonable expectations of the insured. *But cf. Taft*, 433 A.2d at 217–19 (additional rationales utilized by other courts permitting intrapolicy stacking). We see no reason to disturb this view; the stacking provision subsection (C) of § 27–7–2.1 would have provided a similar result in *Taft* had it been in effect at the time.

Indeed, there is a plethora of authority pertaining to the stacking subject, and in particular, to the stacking of medical payments. *See, e.g.,* Brown, *Intra–Policy Stacking of Uninsured Motorist and Medical Payments Coverages: To Be or Not To Be,* 22 S.D.L.Rev. 349 (1977); Hawks, *Stacking Up to Full Recovery,* 35 Loy.L.Rev. 409 (1989); Annot., 25 A.L.R. 4th 896 (1983); Annot., 25 A.L.R. 4th 66 (1983); Annot., 25 A.L.R. 4th 6 (1983). The case authority described within these sources balances a variety of factors that permit or prohibit the stacking of medical-payments provisions of one or more automobile-liability-insurance policies, either by the same or by different insurers in order to recover the actual amount of damages. However, we need not examine any source because all are inapplicable here; the jurisdictions considering this issue uniformly compare only the limits of the insured's uninsured/underinsured-motorist coverage with the tortfeasor's liability limits. *See, e.g., American Motorists Insurance Co. v. Gould,* 213 Conn. 625, 631, 569 A.2d 1105, 1109 (1990); *Thiac v. State Farm Mutual Automobile Insurance Co.,* 569 So.2d 1217, 1219 (Miss.1990); *Hill v. Allstate Insurance Co.,* 50 Ohio St.3d 243, 553 N.E.2d 658, *reh. denied,* 51 Ohio St.3d 713, 556 N.E.2d 189 (1990); *Mitchell v. State Farm Mutual Automobile Insurance Co.,* 227 Va. 452, 456, 318 S.E.2d 288, 291–92 (1984).

Section 27–7–2.1(B) defines an underinsured motorist as one who "carries automobile *liability* insurance with coverage in an amount *less than the amount of damages* that persons insured pursuant to this section are legally entitled to recover." (Emphasis added.) The Uninsured Motorists Insurance Coverage provision of the policy between Balian and Allstate provides that Allstate will pay "damages for bodily injury or property damage which an insured person is legally entitled to recover from the owner or operator of an uninsured auto." ——————————

The purpose of the underinsured-motorist-coverage statute is to provide an incentive for Rhode Island insureds to purchase sufficient uninsured/underinsured-motorist coverage to protect themselves from finan-

---

**6.** Section 27–7–2.1(C) provides that "[w]henever an insured has paid two (2) or more separate premiums for uninsured motorists' coverage in a single policy of insurance or under several policies with the same insurance company, the insured shall be permitted to collect up to the aggregate amount of coverage for all of the vehicles insured, regardless of any language in the policy to the contrary."

**7.** Section 27–7–2.1 was amended to include subsection (C) by P.L.1987, ch. 435, § 1.

cially irresponsible drivers from whom an insured is legally entitled to recover. Although related, the medical-payments-coverage statute, § 27–7–2.5, as amended by P.L.1987, ch. 573, § 1,[8] whose language is followed by the applicable Allstate policy, provides a wholly separate and distinct type of coverage. The language of this statute explicitly states that it applies "regardless of the fault of the person" injured. Thus for medical-payments coverage to apply, there need not be an uninsured or underinsured motorist. Therefore, although the issue is not addressed on appeal, Balian nevertheless may be entitled to recover under her medical-payments-benefit portion of her policy, as the record indicates that Balian sustained injuries necessitating medical assistance.

We believe permitting the stacking of uninsured-motorist limits with medical payments limits is improper. Unlike *Taft*, which allowed stacking of two separate uninsured-motorist-coverage limits, the present controversy has dissimilar limits. For Balian to recover, both coverage limits—that is, uninsured-motorist and medical-payments benefits—must be added together so that Aptt's liability insurance coverage amounts to less than Balian's limits. Both statutory and case authority, however, assume that uninsured/underinsured-motorist coverage and medical-payment coverage are entirely distinct entities. To sanction stacking here would permit the proverbially prohibited mixing of apples and oranges. As such, the combining of limits cannot trigger the use of the underinsured-motorist statute. Consequently we reverse the trial justice and emphasize that medical-payments coverage cannot be added to or stacked with uninsured/underinsured-motorist coverage to attain limits greater than a tortfeasor's liability limits.

The plaintiff's appeal is denied and dismissed. The defendant's appeal is sustained in part and denied in part. The case is remanded to the Superior Court for further proceedings in accordance with this opinion.

---

8. Section 27–7–2.5, as amended by P.L.1987, ch. 573, § 1 provides in pertinent part:

"No policy insuring against loss resulting from liability imposed by law or for injuries caused by a motor vehicle collision or for injuries arising out of the ownership, maintenance or use of a motor vehicle, shall be delivered or issued in this state unless coverage is provided therein for medical payments in an amount of not less than twenty-five hundred dollars ($2,500) for each individual and five thousand dollars ($5,000) aggregate for the protection of persons injured regardless of the fault of the person so injured, provided however, that the named insured shall have the right to reject such coverage."